GARY PHILLIPS & ASSOCIATES, Appellant,

v.

AMERITECH CORPORATION et al., Appellees.

[Cite as *Gary Phillips & Assoc. v. Ameritech Corp.* (2001), 144 Ohio App.3d 149.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 00AP–1004.

Decided June 5, 2001.

*Murray, Murphy, Moul & Basil, LLP, Brian K. Murphy* and *Joseph Murray*; *Murray & Murray Co., L.P.A., John T. Murray* and *Barbara Quinn Smith,* for appellant.

*Porter, Wright, Morris & Arthur, LLP, James S. Oliphant* and *Ralph F. Gildehaus; Kirkland & Ellis, Frank Cicero, Jr., Leslie M. Smith* and *Carole A. Cheney,* for appellees.

---

PETREE, Judge.

On August 11, 1999, plaintiff, Gary Phillips & Associates, filed a class action complaint against defendants, Ameritech Corporation and Ohio Bell Telephone Company. In that complaint, plaintiff set forth claims for fraud and promissory estoppel, which plaintiff avers are the result of the defendants' advertising and marketing of voice mail services. On February 22, 2000, defendants moved to dismiss these claims pursuant to Civ.R. 12(B)(6) and the "filed rate doctrine," and pursuant to Civ.R. 12(B)(1) on challenge to the trial court's subject matter jurisdiction.

On July 28, 2000, the trial court dismissed plaintiff's complaint on two grounds. First, the court found that "the rates complained of * * * are tariffs regulated and monitored by the PUCO." Second, relying upon *Kazmaier Supermarket, Inc. v. Toledo Edison Co.* (1991), 61 Ohio St.3d 147, 573 N.E.2d 655, the court found that it lacked subject matter jurisdiction. Plaintiff now appeals raising the following two assignments of error:

"1. The trial court erred as a matter of law in applying the 'filed rate doctrine' to bar appellant's complaint.

"2. The trial court erred as a matter of law in finding that the common pleas court had no subject matter jurisdiction."

In its complaint, plaintiff claims that it was intentionally misled by the defendants in regard to the fee it would be charged for voice mail service. As set forth in its complaint, defendants' voice mail service receives and records incoming messages for subscribers, which may then be reviewed, deleted, or saved. Plaintiff charges, however, that in an effort to increase the sale of its voice mail services, defendants engaged in an intentionally false and deceptive advertising campaign designed to mislead customers into believing that defendants' voice mail service could be purchased at a flat monthly rate. As detailed in plaintiff's complaint:

"7. Ameritech and Bell have engaged in a massive marketing effort for Ameritech Voice Mail, with one common theme and singular emphasis in that marketing effort: namely, that Ameritech Voice Mail is for sale at a flat monthly rate. Ameritech and Bell intentionally give the impression through their marketing that no charges other than the flat monthly fee will be incurred to receive, record, review, save or erase the messages. * * *

"* * *

"11. Beginning in 1998 and continuing through the date of this Complaint, Ameritech and Bell telemarketers have called hundreds of thousands of Ameritech and Bell customers and, using calculated, uniform scripts, represented to those customers that, one voice mail product in particular, Voice Mail*98, costs the customer 'just $4.95 a month.'

"* * *

"16. Once a month every month following each individual's initial subscription for Ameritech Voice Mail, Ameritech directs Bell to send each Ameritech Voice Mail subscriber a written Billing Summary for services that unambiguously represents Ameritech Voice Mail is being purchased by the subscriber for a flat monthly rate. * * *

"17. Ameritech's uniform marketing * * * that Ameritech Voice Mail customers would be charged only the represented flat rate charge was intentionally and knowingly false and misleading. Similarly, Bell's uniform marketing * * * that Ameritech Voice Mail customers would be charged only the represented flat rate charge was intentionally and knowingly false and misleading. This marketing was false and misleading because Ameritech routinely charged Plaintiff * * * for Voice Mail related charges that were above and beyond the quoted flat rate or free price represented, advertised, and promised by Ameritech and Bell. In addition to the flat monthly rate for Ameritech Voice Mail, Ameritech and Bell routinely charged Plaintiff * * * a local call charge for calls received by the customer's voice mailbox. Similarly, when an Ameritech Voice Mail subscriber attempts to access messages from a remote location by dialing the Ameritech Voice Mail subscriber's own telephone number, Ameritech and Bell routinely imposed a local call charge as if a call were made from the subscriber's own telephone number. Depending upon the monthly service plan in place, the Ameritech Voice Mail subscriber is charged a varying amount for each call received by the customer's voice mailbox and for each remote call the customer makes to access messages contained in his/her mailbox."

The trial court dismissed plaintiff's complaint pursuant to Civ.R 12(B)(6) and Civ.R. 12(B)(1).

A Civ.R. 12(B)(6) motion to dismiss is a procedural motion designed to test the legal sufficiency of a complaint. *Thompson v. Cent. Ohio Cellular, Inc.* (1994), 93 Ohio App.3d 530, 538, 639 N.E.2d 462, 467, citing *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.* (1992), 65 Ohio St.3d 545, 605 N.E.2d 378. The standard to be applied in determining whether to dismiss a complaint pursuant to Civ.R. 12(B)(6) is set forth in *O'Brien v. Univ. Community Tenants Union, Inc.* (1975), 42 Ohio St.2d 242, 71 O.O.2d 223, 327 N.E.2d 753. In *O'Brien,* the

Supreme Court stated that " 'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Id.* at 245, 71 O.O.2d at 224, 327 N.E.2d at 754–755, quoting *Conley v. Gibson* (1957), 355 U.S. 41, 45, 78 S.Ct. 99, 101, 2 L.Ed.2d 80, 84. See, also, *Toledo v. Thomas* (1989), 60 Ohio App.3d 42, 572 N.E.2d 867; and *Kotyk v. Rebovich* (1993), 87 Ohio App.3d 116, 621 N.E.2d 897. Accordingly, when examining a complaint for Civ.R. 12(B)(6) compliance, the court must presume that all factual allegations of the complaint are true and must also make all reasonable inferences in favor of the nonmoving party.

Defendants argue that the "filed rate doctrine" bars the plaintiff's claims because those claims involve local call charges that are set forth in a publicly filed tariff. See R.C. 4905.30. The Ohio General Assembly has created a comprehensive statutory system for regulating the business activities of public utilities. Contained within Title 49 of the Ohio Revised Code is the framework for the regulation of utility service, and the fixation of rates charged by utilities to their customers. In order to administer this system, the General Assembly created the Public Utilities Commission ("PUCO") and bestowed upon it the authority to administer and enforce the provisions of R.C. Title 49.

As part of this regulatory scheme, every public utility in the state is required to apply for PUCO approval of tariff schedules that detail the rates, charges, and classifications of their services. R.C. 4905.30. This requirement has given birth to what is known as the "filed rate doctrine." The filed rate doctrine, embodied in R.C. 4905.33, mandates that a public utility must charge the tariff rates approved by the PUCO. Further, deviation from those rates is not permitted except under the supervision of the PUCO.

While public utilities are subject to pervasive regulation, and while the PUCO is vested with sweeping oversight, such authority is not all-encompassing, nor does it in any manner diminish the "jurisdiction of the court of common pleas in other areas of possible claims against public utilities." *Kazmaier, supra,* at 154, 573 N.E.2d at 660. See, also, *Milligan v. Ohio Bell Tel. Co.* (1978), 56 Ohio St.2d 191, 10 O.O.3d 352, 383 N.E.2d 575 (a claim against a public utility for invasion of privacy may be brought in common pleas court); *Kohli v. Pub. Util. Comm.* (1985), 18 Ohio St.3d 12, 18 OBR 10, 479 N.E.2d 840 (failure to warn of dangerous condition); and *Marketing Research Serv., Inc. v. Pub. Util. Comm.* (1987), 34 Ohio St.3d 52, 517 N.E.2d 540 (PUCO's refusal to exercise jurisdiction over breach of contract affirmed).

In this instance, the trial court erred when it dismissed plaintiff's complaint on the basis that "the rates complained of herein are tariffs regulated and

monitored by the PUCO." While it is true that the defendants' local call charges are covered by a valid tariff, the heart of the plaintiff's complaint is that the defendants have engaged in fraudulent and misleading *advertising* practices. The core allegation and focus of this complaint does not stand or fall on the reasonableness of what the defendants charge for local calls, the defendants' authority to charge for local calls, or the availability or quality of local call service. Instead, it turns upon the legality of the defendants' advertising practices and, specifically, upon whether the defendants intentionally misled customers into believing that they would not be charged for local calls, or any other service in connection with the use of voice mail. As such, the trial court improperly concluded that the plaintiff's claim is barred by the filed rate doctrine. Plaintiff's first assignment of error is therefore well taken.

In the second assignment of error, plaintiff challenges the trial court's jurisdictional conclusion. The standard applied to determine whether to dismiss a complaint for lack of subject matter jurisdiction pursuant to Civ.R. 12(B)(1) is whether the plaintiff has alleged any cause of action which the court has authority to decide. *State ex rel. Bush v. Spurlock* (1989), 42 Ohio St.3d 77, 80, 537 N.E.2d 641, 644–645; *Prosen v. Dimora* (1992), 79 Ohio App.3d 120, 123, 606 N.E.2d 1050, 1052; and *McHenry v. Indus. Comm.* (1990), 68 Ohio App.3d 56, 62, 587 N.E.2d 414. Such a determination is a question of law that is reviewed on appeal independently of the trial court's analysis and decision. See *Southgate Dev. Corp. v. Columbia Gas Transm. Corp.* (1976), 48 Ohio St.2d 211, 2 O.O.3d 393, 358 N.E.2d 526, paragraph one of the syllabus. See, also, *Campbell v. Johnson* (Dec. 30, 1999), Franklin App. No. 99AP–483, unreported, 1999 WL 1267348, discretionary appeal not allowed (2000), 88 Ohio St.3d 1503, 727 N.E.2d 925; and *Shockey v. Fouty* (1995), 106 Ohio App.3d 420, 424, 666 N.E.2d 304, 306.

Without elaboration, the court based its conclusion that it did not have subject matter jurisdiction on the Ohio Supreme Court's decision in *Kazmaier, supra.* However, given the facts of this case, reliance upon that decision was misplaced.

In *Kazmaier, supra,* the court was presented with "a dispute over the correct rate to be assessed. * * *" *Id.* at 153, 573 N.E.2d at 660. Specifically, *Kazmaier* complained that it was billed under the wrong rate schedule and was thus charged a higher rate than that authorized under the utility's tariff.

Conversely, although incidentally connected to a regulated service, this dispute does not involve a regulated matter. Accordingly, *Kazmaier* is distinguishable, and the plaintiff's second assignment of error is also well taken.

For the foregoing reasons, both of plaintiff's assignments of error are sustained, the judgment of the Franklin County Court of Common Pleas is reversed,

and this cause is remanded to that court for further proceedings in accordance with law, consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

BOWMAN and BROWN, JJ., concur.