[This decision has been published in *Ohio Official Reports* at 97 Ohio St.3d 69.]

THE STATE EX REL. THE ILLUMINATING COMPANY *v.* CUYAHOGA COUNTY COURT OF COMMON PLEAS ET AL.

[Cite as *State ex rel. The Illuminating Co. v. Cuyahoga Cty. Court of Common Pleas*, 2002-Ohio-5312.]

*Public utilities—Electric companies—Prohibition—Writ prohibiting common pleas court judge from exercising jurisdiction over respondent's fraud and rescission claims against electric company and those declaratory relief claims not involving indefiniteness and lack of consideration granted, when—Allegations of violations of R.C. Chapter 4905 and Public Utilities Commission regulations are within the exclusive initial jurisdiction of the commission.*

(No. 2002-0298—Submitted August 27, 2002—Decided October 16, 2002.)

IN PROHIBITION.

———————————

**Per Curiam.**

{¶1} Relator, The Illuminating Company, a.k.a. the Cleveland Electric Illuminating Company ("CEI"), is an Ohio corporation doing business as a regulated public utility in Ohio. In October 1994, CEI entered into an agreement to provide electric service to Parkbrook Development Corporation ("Parkbrook") at 1600 East 55th Street, Cleveland, Ohio. In September 1995, respondent All Erection & Crane Rental Corporation ("AE") acquired title to the property, although Parkbrook continued in possession. A dispute subsequently arose concerning unpaid electricity bills for the property. In September 1999, AE sent CEI $5,000 to be applied to the unpaid balance and a letter stating that "as owner of the referenced property [AE] will accept responsibility for all monies owed to C.E.I. for legitimate electric charges." In July 2000, CEI disconnected the

electricity for the property because of an unpaid balance asserted to exceed $34,000.

{¶2} On January 23, 2001, CEI filed a complaint in respondent Cuyahoga County Court of Common Pleas against AE and Parkbrook to recover the arrearages. In its complaint, CEI alleged that AE had assumed responsibility for the arrearages by its September 1999 letter. CEI claimed that the letter constituted a guaranty.

{¶3} On March 8, 2001, AE filed a complaint against CEI with the Public Utilities Commission of Ohio. In its commission complaint, AE alleged that by seeking to collect the account arrearage in the common pleas court action, CEI violated R.C. 4905.22 as well as various provisions of the Electric Service and Safety Standards, Ohio Adm.Code Chapter 4901:1-10.[1] More specifically, AE alleged that CEI violated (1) Ohio Adm.Code 4901:1-10-24(B)(2), by charging AE for electric service for which AE did not make an initial affirmative order; (2) Ohio Adm.Code 4901:1-10-14, for acting contrary to commission rules governing account guarantors and the procedures for obtaining a guaranty on an account; (3) R.C. 4905.22, for demanding unjust and unreasonable charges; and (4) Ohio Adm. Code 4901:1-10-22, for not following commission rules governing billing requirements. AE requested that the commission investigate the matter, find that CEI violated the cited public-utility statute and regulations, prevent CEI from collecting the money from AE in the common pleas court case, and order CEI to repay the money AE paid to CEI in reliance on CEI's false statements concerning the electric bill for the property.

{¶4} On March 26, 2001, AE filed an answer and counterclaim to CEI's complaint in the court of common pleas. In the introductory paragraph of its

---

1. The Electric Service and Safety Standards are rules promulgated by the commission "to promote safe and reliable service to consumers and the public, and to provide minimum standards for uniform and reasonable practices." Ohio Adm. Code 4901:1-10-01(A)(2).

counterclaim, AE asserted that it requested monetary damages and other relief from CEI for making material misrepresentations and "violating Ohio statutory and administrative law" in the process of attempting to compel AE to pay money it had no obligation to pay. AE specified that the purpose of its counterclaim was to remedy CEI's illegal conduct, which it claimed to be "expressly forbidden by Ohio Administrative Code regulations promulgated by the Ohio Public Utilities Commission."

{¶5} AE further alleged in the first 45 paragraphs of its counterclaim, which are nearly identical to the first 44 numbered paragraphs of its March 8, 2001 commission complaint against CEI, that CEI had violated Ohio Adm.Code 4901:1-10-24(B)(2), 4901:1-10-14, and 4901:1-10-22, as well as R.C. 4905.22.

{¶6} In the three counts of AE's counterclaim, each of which incorporated by reference those allegations of violations of a public-utility statute and commission regulations, AE raised claims of fraud, rescission based on fraud, and declaratory relief.

{¶7} In its fraud claim, AE alleged that in September 1999, CEI "falsely and fraudulently and without factual basis represented that [AE] bore responsibility for charges on other's [sic] accounts, *arguing right and authority to make such claims under Ohio regulatory and statutory law*." (Emphasis added.) AE further alleged that CEI knew "at the time that its statements were false, *and that its conduct was expressly prohibited by Ohio law*" and that "[i]t is a per se deceptive practice under Ohio law for an electric distribution company or electric service company to charge a customer for a service in which the customer *did not make an initial affirmative order*." (Emphasis added.)

{¶8} In its rescission claim, AE alleged that if the common pleas court held that its September 1999 letter to CEI constituted a guaranty, AE would be entitled to rescission of the guaranty based on the fraud in its procurement set forth in AE's fraud claim.

{¶9} In its final claim, AE asserted that it was entitled to a judgment declaring that AE had no obligation to CEI under the September 1999 letter, because that document does not constitute a guaranty. More specifically, AE alleged that the letter does not constitute a guaranty because (1) "it is not definite in its terms"; (2) "it was procured as a result of a fraud"; (3) "it was not supported by consideration, and is therefore unenforceable even if definite in terms"; (4) "the letter—and the money paid along with it—were obtained in violation of numerous OAC and Revised Code provisions, as identified above"; and (5) it "is illegal and therefore is unenforceable on grounds of public policy."

{¶10} On April 10, 2001, CEI filed a motion to dismiss AE's counterclaim, in which CEI asserted that the common pleas court lacked subject-matter jurisdiction, because the commission had exclusive initial jurisdiction of the claims raised in the counterclaim.

{¶11} On October 1, 2001, respondent Judge Daniel O. Corrigan of the common pleas court overruled CEI's motion to dismiss AE's counterclaim.

{¶12} On October 9, 2001, the day before the scheduled commission hearing on its complaint against CEI, AE filed a notice of dismissal without prejudice of its commission action. In its notice, AE specified that it had "just received Notice from The Cuyahoga County Common Pleas Court of the overruling of The Illuminating Company's Motion to Dismiss the [AE] counterclaim *regarding many of the same issues alleged in the within complaint*." (Emphasis added.) Id. On October 24, 2001, upon AE's notice, the commission dismissed AE's complaint without prejudice. The commission has not rendered any findings that CEI violated any public-utilities statute or commission regulation.

{¶13} On February 15, 2002, CEI filed a complaint in this court for a writ of prohibition to prevent the common pleas court and Judge Corrigan from exercising jurisdiction over AE's counterclaim. The common pleas court and Judge Corrigan filed a motion to dismiss, and AE filed an application to intervene and a

motion to dismiss. On May 1, 2002, we granted the application of AE to intervene as a respondent, denied the motions to dismiss, granted an alternative writ, and issued a schedule for the presentation of evidence and briefs. *State ex rel. Illuminating Co. v. Cuyahoga Cty. Court of Common Pleas*, 95 Ohio St.3d 1435, 2002-Ohio-2084, 766 N.E.2d 1001.

{¶14} CEI requests a writ of prohibition to prevent the common pleas court and Judge Corrigan from exercising jurisdiction over AE's counterclaim. In order to be entitled to the requested extraordinary relief in prohibition, CEI must establish that (1) the common pleas court and Judge Corrigan are about to exercise judicial or quasi-judicial power, (2) the exercise of that power is unauthorized by law, and (3) denial of the writ will cause injury for which no other adequate remedy in the ordinary course of law exists. *State ex rel. Sartini v. Yost*, 96 Ohio St.3d 37, 2002-Ohio-3317, 770 N.E.2d 584, ¶ 23.

{¶15} CEI has established the first prerequisite for the issuance of the writ. Judge Corrigan and the common pleas court have exercised and will continue to exercise judicial power in the underlying case by denying CEI's motion to dismiss AE's counterclaim for lack of subject-matter jurisdiction and will continue to exercise judicial power as the case proceeds.

{¶16} Concerning the remaining requirements for a writ of prohibition, "[w]here an inferior court patently and unambiguously lacks jurisdiction over the cause, prohibition will lie both to prevent the future unauthorized exercise of jurisdiction and to correct the results of prior actions taken without jurisdiction." *Hughes v. Calabrese*, 95 Ohio St.3d 334, 2002-Ohio-2217, 767 N.E.2d 725, ¶ 15.

{¶17} The dispositive issue here is whether, as CEI claims, the common pleas court and Judge Corrigan patently and unambiguously lack jurisdiction over AE's counterclaim because the counterclaim is within the exclusive jurisdiction of the commission.

**{¶18}** "The commission has exclusive jurisdiction over various matters involving public utilities, such as rates and charges, classifications, and service, effectively denying to all Ohio courts (except this court) any jurisdiction over such matters." *State ex rel. Cleveland Elec. Illum. Co. v. Cuyahoga Cty. Court of Common Pleas* (2000), 88 Ohio St.3d 447, 450, 727 N.E.2d 900. R.C. 4905.26 confers exclusive jurisdiction on the commission to determine whether any charge by a public utility "is in any respect unjust, unreasonable, * * * or in violation of law." R.C. 4905.22 specifies that charges for public-utility services must be "just, reasonable, and not more than the charges allowed by law or by order of the public utilities commission."

**{¶19}** Therefore, " '[t]he jurisdiction specifically conferred by statute upon the Public Utilities Commission over public utilities of the state * * * is so complete, comprehensive and adequate as to warrant the conclusion that it is likewise exclusive.' " *State ex rel. N. Ohio Tel. Co. v. Winter* (1970), 23 Ohio St.2d 6, 9, 52 O.O.2d 29, 260 N.E.2d 827, quoting *State ex rel. Ohio Bell Tel. Co. v. Cuyahoga Cty. Court of Common Pleas* (1934), 128 Ohio St. 553, 557, 1 O.O. 99, 192 N.E. 787; see, also, *Kazmaier Supermarket, Inc. v. Toledo Edison Co.* (1991), 61 Ohio St.3d 147, 152, 573 N.E.2d 655.

**{¶20}** As the parties acknowledge, however, courts retain limited subject-matter jurisdiction over pure common-law tort and certain contract actions involving utilities regulated by the commission. See, e.g., *State ex rel. Ohio Edison Co. v. Parrott* (1995), 73 Ohio St.3d 705, 708, 654 N.E.2d 106, and cases cited therein; see, also, *Suleiman v. Ohio Edison Co.* (2001), 146 Ohio App.3d 41, 45, 764 N.E.2d 1098.

**{¶21}** Consequently, we must determine whether the claims raised by AE in its counterclaim are within the exclusive initial jurisdiction of the commission or are pure tort and contract claims that do not require a consideration of statutes and regulations administered and enforced by the commission. In this regard, we must

6

review the substance of the claims rather than mere allegations that the claims sound in tort or contract. *Kazmaier*, 61 Ohio St.3d at 154, 573 N.E.2d 655. In other words, "[c]asting the allegations in the complaint to sound in tort or contract is not sufficient to confer jurisdiction upon a trial court" when the basic claim is one that the commission has exclusive jurisdiction to resolve. *Higgins v. Columbia Gas of Ohio, Inc.* (2000), 136 Ohio App.3d 198, 202, 736 N.E.2d 92.

{¶22} We conclude that the common pleas court and Judge Corrigan patently and unambiguously lack jurisdiction over the majority of AE's claims. Allegations of violations of R.C. Chapter 4905 and commission regulations are within the exclusive initial jurisdiction of the commission. *State ex rel. Dayton Power & Light Co. v. Kistler* (1979), 57 Ohio St.2d 21, 23, 11 O.O.3d 108, 385 N.E.2d 1076 ("alleged violations of R.C. Chapter 4905 * * * are the concern of the Public Utilities Commission in the first instance"). Similarly, we have held, "A Court of Common Pleas is without jurisdiction to hear a claim alleging that a utility has violated R.C. 4905.22 by charging an unjust and unreasonable rate and wrongfully terminating service, since such matters are within the exclusive jurisdiction of the Public Utilities Commission." *Milligan v. Ohio Bell Tel. Co.* (1978), 56 Ohio St.2d 191, 10 O.O.3d 352, 383 N.E.2d 575, paragraph two of the syllabus.

{¶23} The introductory paragraph of AE's counterclaim specifies that the counterclaim is based on conduct by CEI that is illegal because it is "expressly forbidden by the Ohio Administrative Code regulations promulgated by the Ohio Public Utilities Commission." AE, using language substantially similar to the language of its complaint against CEI filed with the commission, expressly alleges violations of R.C. 4905.22 and various commission regulations that constitute the Electric Service and Safety Standards. Each of the three counts in AE's counterclaim incorporates these allegations. The common pleas court manifestly

lacked jurisdiction to determine whether CEI violated R.C. 4905.22 or commission regulations. *Kistler* and *Milligan*.

{¶24} In its counterclaim, AE's first claim of common-law fraud is expressly premised upon the incorporated alleged violations of R.C. 4905.22 and the Electric Service and Safety Standards. Common-law fraud requires proof of the following elements: "(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance." *Russ v. TRW, Inc.* (1991), 59 Ohio St.3d 42, 49, 570 N.E.2d 1076; *Burr v. Stark Cty. Bd. of Commrs.* (1986), 23 Ohio St.3d 69, 23 OBR 200, 491 N.E.2d 1101, paragraph two of the syllabus.

{¶25} AE's fraud claim is specifically dependent upon its assertion that CEI's misrepresentation to AE that AE was liable for Parkbrook's unpaid electricity bill violated R.C. 4905.22 and commission regulations. The commission regulations that CEI allegedly violated included Ohio Adm.Code 4901:1-10-24(B)(2), which prohibits charging for electric service when there has been no initial affirmative order for service. In other words, in order to prove its fraud claim, AE must establish that CEI's alleged representations were made falsely or with reckless disregard of the truth, which is dependent upon the court's initially determining whether CEI violated the public-utilities statutes and regulations.

{¶26} AE essentially admits that resolution of its fraud claim requires this initial determination that CEI's representations violated Ohio statutory and regulatory law on public utilities by contending in its dismissal motion that the trial court may find it "necessary to view Ohio statutory and regulatory law to determine if such a representation was outside the bounds of Ohio law."

**{¶27}** AE's second claim, rescission, is similarly based upon alleged violations of R.C. 4905.22 and commission regulations. In its second claim, AE contends that it is entitled to rescission of the so-called guaranty based upon the same fraudulent conduct by CEI alleged in AE's first claim.

**{¶28}** AE's third claim, for a declaratory judgment that the alleged guaranty is ineffective, is also based for the most part on the previous allegations of fraud and violation of the specified statutory and regulatory provisions relating to utilities. Therefore, the portions of AE's complaint for a declaration that the guaranty was procured by fraud, obtained in violation of "numerous OAC and Revised Code provisions, as identified above," and generally illegal were beyond the court's jurisdiction. These claims were founded on the same alleged violations of public-utilities statutes and regulations that the common pleas court lacks jurisdiction to consider before the commission makes its determination.

**{¶29}** AE in effect conceded that the common pleas court lacked jurisdiction over these claims when it dismissed its complaint filed with the commission because its counterclaim comprised "many of the same issues."

**{¶30}** In addition, the main cases relied on by respondents are inapposite. Unlike AE's counterclaim, the claims in these cases did not include specifically alleged violations of statutes and regulations involving public utilities. Cf. *State ex rel. Dayton Power & Light Co. v. Riley* (1978), 53 Ohio St.2d 168, 7 O.O.3d 317, 373 N.E.2d 385; *State ex rel. Ohio Power Co. v. Harnishfeger* (1980), 64 Ohio St.2d 9, 18 O.O.3d 130, 412 N.E.2d 395; *Gary Phillips & Assoc. v. Ameritech Corp.* (2001), 144 Ohio App.3d 149, 759 N.E.2d 833.

**{¶31}** Based on the foregoing, the court of common pleas and Judge Corrigan patently and unambiguously lack jurisdiction over AE's fraud and rescission claims as well as those portions of AE's counterclaim relying on fraud, violation of the public-utility statutory and regulatory provisions, and general illegality, until the commission determines AE's claims regarding whether CEI

violated R.C. 4905.22 and Ohio Adm.Code 4901:1-10-14, 4901:1-10-22, and 4901:1-10-24(B). These claims do not fit within the limited exceptions to the commission's exclusive jurisdiction for claims based purely on common-law tort or contract.

{¶32} Nevertheless, the court of common pleas and Judge Corrigan do not patently and unambiguously lack jurisdiction over AE's claims for declaratory judgment based upon indefiniteness and lack of consideration. These are purely contractual claims that are independent of any claim that CEI violated any provision of R.C. Title 49 or commission regulations. Regarding these claims, the commission has no power to determine rights and liabilities even though a public utility is involved. See, e.g., *Marketing Research Serv., Inc. v. Pub. Util. Comm.* (1987), 34 Ohio St.3d 52, 56, 517 N.E.2d 540. A writ of prohibition is thus inappropriate as to these claims.

{¶33} Therefore, we grant a writ of prohibition to prevent the common pleas court and Judge Corrigan from exercising jurisdiction over AE's fraud and rescission claims, and those declaratory relief claims not involving indefiniteness and lack of consideration, and deny the writ regarding AE's remaining claims for declaratory relief.

Writ granted in part

and denied in part.

MOYER, C.J., RESNICK, F.E. SWEENEY and LUNDBERG STRATTON, JJ., concur.

DOUGLAS, J., concurs in judgment only.

PFEIFER, J., dissents and would dismiss the cause.

COOK, J., not participating.

_____

Jones, Day, Reavis & Pogue, David A. Kutik and Mark A. Whitt; Weltman, Weinberg & Reis Co., L.P.A., and Robert B. Weltman; and James W. Burk, for relator.

William D. Mason, Cuyahoga County Prosecuting Attorney, and Charles E. Hannan, Assistant Prosecuting Attorney, for respondents Cuyahoga County Court of Common Pleas and Judge Daniel O. Corrigan.

Michael R. Gareau & Associates Co., L.P.A., Michael R. Gareau, Michael R. Gareau, Jr. and David M. Gareau, for respondent All Erection and Crane Rental Corporation.

_____