[Cite as *Jones v. Ohio Edison Co.*, 2014-Ohio-5466.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**ASHTABULA COUNTY, OHIO**

| | | |
|---|---|---|
| LORETTA JONES, et al., | : | **O P I N I O N** |
| Plaintiffs-Appellants, | : | |
| - vs - | : | **CASE NO. 2014-A-0015** |
| OHIO EDISON COMPANY, | : | |
| Defendant-Appellee. | : | |

Civil Appeal from the Ashtabula County Court of Common Pleas, Case No. 2013 CV 00623.

Judgment: Affirmed.

*Mark D. McGraw,* 1370 Ontario Street, #800, Cleveland, OH 44113-1752 (For Plaintiffs-Appellants).

*John T. Dellick,* Harrington, Hoppe & Mitchell, Ltd., 1200 Sky Bank Building, 26 Market St., Suite 1200, P.O. Box 6077, Youngstown, OH 44501-6077 (For Defendant-Appellee).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellants, Loretta Jones and William Fifolt, appeal the judgment of the Ashtabula County Court of Common Pleas dismissing their complaint for damages against appellee, Ohio Edison Company, for lack of subject-matter jurisdiction. At issue is whether appellants' complaint represents a service complaint, which is within the exclusive jurisdiction of the Public Utilities Commission of Ohio ("PUCO"). For the reasons that follow, we affirm.

{¶2} Appellants filed this action against Ohio Edison, a public utility, which provided electricity to them at their former residence in Dorset, Ashtabula County, Ohio. In their complaint, appellants alleged that in mid- or late-July 2011, Ohio Edison replaced the utility pole that carries power lines to their residence. They alleged that Ohio Edison was negligent in connecting the power lines to the pole by using faulty equipment; connecting the lines too tightly to the pole; or connecting them too loosely. Appellants alleged that about one month later, on August 14, 2011, due to Ohio Edison's negligence, the power lines snapped off the pole, causing a power surge at their residence, resulting in damage to certain electric appliances and wiring. Appellants sought damages in the amount of $25,000.

{¶3} In response, Ohio Edison filed a motion to dismiss the complaint for lack of subject-matter jurisdiction, pursuant to Civ.R. 12(B)(1). Ohio Edison argued that, although appellants couched their complaint in terms of a negligence claim, the complaint asserted a claim arising from a power surge, which constitutes a service complaint, a matter within the exclusive jurisdiction of PUCO. Appellants filed a brief in opposition, arguing that PUCO did not have jurisdiction over their negligence claim. Upon considering the parties' briefs, the trial court entered judgment granting Ohio Edison's motion to dismiss.

{¶4} Appellants appeal the trial court's judgment, asserting the following for their sole assignment of error:

{¶5} "The trial court committed prejudicial error in granting defendant-appellee's, Ohio Edison Company's, Motion to Dismiss for Lack of Subject Matter Jurisdiction."

{¶6} Subject-matter jurisdiction is the power conferred upon a court, either by constitutional provision or by statute, to decide a particular matter or issue on its merits. *State ex rel. Jones v. Suster*, 84 Ohio St.3d 70, 75 (1998). A motion to dismiss for lack of subject-matter jurisdiction is made pursuant to Civ.R. 12(B)(1), and "[t]he standard of review for a dismissal pursuant to Civ.R. 12(B)(1) is whether any cause of action cognizable by the forum has been raised in the complaint." *State ex rel. Bush v. Spurlock*, 42 Ohio St.3d 77, 80 (1989). This court has noted, "'in determining whether the plaintiff has alleged a cause of action sufficient to withstand a Civ.R. 12(B)(1) motion to dismiss, the trial court is not confined to the allegations of the complaint and it may consider material pertinent to such inquiry without converting the motion into one for summary judgment.'" *Kinder v. Zuzak*, 11th Dist. Lake No. 2008-L-167, 2009-Ohio-3793, ¶10, quoting *McHenry v. Industrial Com. of Ohio*, 68 Ohio App.3d 56, 62 (4th Dist.1990).

{¶7} Further, in ruling on a Civ.R. 12(B)(1) motion to dismiss, the court is not required to take the allegations in the complaint at face value. *N. Central Local Edn. Assn. v. N. Central Local School Dist. Bd. of Edn.*, 9th Dist. Wayne No. 96CA0011, 1996 Ohio App. LEXIS 4349, *3 (Oct. 2, 1996). "'[N]o presumptive truthfulness attaches to [the] plaintiff's allegations[.] * * *'" *Id.*, quoting *Mortensen v. First Fed. S. & L. Ass'n.*, 549 F.2d 884, 891 (3d Cir.1977). Further, we review an appeal of a dismissal for lack of subject-matter jurisdiction under Civ.R. 12(B)(1) de novo. *Washington Mut. Bank v. Beatley*, 10th Dist. Franklin No. 06AP-1189, 2008-Ohio-1679, ¶8.

{¶8} "The General Assembly has created a broad and comprehensive statutory scheme for regulating the business activities of public utilities." *Kazmaier Supermarket,*

3

*Inc. v. Toledo Edison Co.*, 61 Ohio St.3d 147, 150 (1991). "R.C. Title 49 sets forth a detailed statutory framework for the regulation of utility service and the fixation of rates charged by public utilities to their customers." *Id.* As part of that scheme, the legislature created PUCO, and "empowered it with broad authority to administer and enforce the provisions of Title 49." *Id.*

{¶9}   R.C. 4905.26 provides that PUCO shall determine any complaint by any person against a public utility alleging that any rate charged or service rendered is in any respect unjust, unreasonable, in violation of law, or inadequate. The Ohio Supreme Court has interpreted this provision to confer jurisdiction upon PUCO to hear all complaints pertaining to service provided by a public utility, i.e., "service complaints." *Kazmaier, supra*, at 151. Further, where PUCO has jurisdiction as provided by this statute, that jurisdiction is exclusive and reviewable only by the Supreme Court of Ohio. *State ex rel. N. Ohio Tel. Co. v. Winter*, 23 Ohio St.2d 6 (1970). The detailed procedure for filing rate and/or service complaints set forth in R. C. 4905.26 expresses the intention of the General Assembly that such powers were to be vested solely in PUCO. *Winter, supra*, at 9.

{¶10} However, courts retain limited subject-matter jurisdiction over "pure tort claims" and certain contract actions involving public utilities. *State ex rel. Illuminating Co. v. Cuyahoga Cty. Court of Common Pleas*, 97 Ohio St.3d 69, 2002-Ohio-5312, ¶20.

{¶11} Thus, we must determine whether appellants' claim falls within the exclusive jurisdiction of PUCO or is a pure tort claim within the jurisdiction of the common pleas court. *Id.* at ¶21. "'[C]asting the allegations in the complaint to sound in tort * * * is not sufficient to confer jurisdiction upon a trial court' when the basic claim is

4

one that the commission has exclusive jurisdiction to resolve." *Id.*, quoting *Higgens v. Columbia Gas of Ohio, Inc.,* 136 Ohio App.3d 198, 202 (7th Dist.2000). Moreover, in *Allstate Ins. Co. v. Cleveland Electric Illuminating Co,* 119 Ohio St.3d 301, 2008-Ohio-3917, ¶8, the Supreme Court rejected the notion that alleging a tort is sufficient, by itself, to confer jurisdiction upon the common pleas court. The Supreme Court held that in cases involving public utilities, jurisdiction is not conferred based solely on the pleadings. *Id.* Instead, courts must look to the *substance of the allegatio*ns in the complaint to determine the proper jurisdiction. *Id.* at ¶9; *Illum. Co., supra*, citing *Kazmaier, supra*, at 154.

{¶12} Further, while "trial courts determine their own jurisdiction," such determinations can be challenged. *Allstate, supra*, at ¶11. The Ohio Supreme Court in *Allstate*, adopted a two-part test to help courts decide when a trial court, rather than PUCO, has jurisdiction over a case involving a public utility alleged to have committed a tort, i.e., a "pure tort." Under this test, a court asks (1) whether PUCO's administrative expertise is required to resolve the issue in dispute, and (2) whether the act complained of constitutes a practice normally authorized by the utility. If the answer to either question is "No," the claim is one for a pure tort and is not within PUCO's exclusive jurisdiction. *Id.* at ¶11-13. Thus, the answer to both questions must be yes in order for the claim to fall within PUCO's jurisdiction.

{¶13} With respect to the first question, the complaint alleged that Ohio Edison was negligent in attaching power lines to a utility pole by using faulty equipment in attaching the lines to the pole; connecting the power lines to the pole too tightly; or connecting them too loosely.

5

{¶14} In determining whether appellants' claim presents a service complaint (in PUCO's jurisdiction) or a pure tort (in the court's jurisdiction), we first consider the substance of the allegations of the complaint. While appellants cast the allegations in the complaint to sound in tort, the issue presented here is whether Ohio Edison provided faulty service to appellants resulting in a power surge and property damage. Thus, regardless of how appellants couched the language in the complaint, their claim more closely resembles service-related claims than pure tort actions. *Hiener v. Cleveland Electric Illuminating Co.*, 11th Dist. Geauga No. 95-G-1948, 1996 Ohio App. LEXIS 3358 (Aug. 9, 1996) (tort claim for damages caused to a television set from a power surge more closely resembled service complaint than a pure tort action and fell within R.C. Chapter 4905 regulating service complaints); *LaForge v. Cleveland Electric Illuminating Co.*, 115 Ohio App.3d 740 (11th Dist.1996) (complaint against utility alleging it caused damage to plaintiff's furnace during period of low voltage known as a "brownout" was clearly service-related); *Miles Mgmt. Corp. v. FirstEnergy Corp.*, 8th Dist. Cuyahoga No. 84197, 2005-Ohio-1496 (manner in which electric company provided or failed to provide electrical service is service-related and within PUCO's jurisdiction).

{¶15} In contrast, *Allstate, supra*, provides a typical example of a case against an electric utility involving a pure tort. In *Allstate*, the plaintiff noticed a large tree limb leaning on the power lines leading to her home. Over a period of five hours, she called CEI three times to report the situation. Shortly after the last call, the lines broke, causing sparks that set her home on fire, resulting in extensive damage. Allstate paid the claim and asserted a subrogation claim against CEI. The trial court denied CEI's

6

motion to dismiss. The Supreme Court upheld the trial court's judgment, holding that the substance of Allstate's claim was that CEI was negligent in failing to respond to emergency calls from the property owner. *Id.* at ¶14. The Court held Allstate's claim was no different from those brought against a business that negligently fails to correct a known dangerous condition on its property. *Id.* The Court held the ultimate issue was whether the delay between CEI's receipt of the calls and arrival at the residence was reasonable and that this issue was appropriate for resolution by a jury. *Id.* The Court held the expertise of PUCO was not necessary to resolve the case. *Id.* Thus, the Court held PUCO did not have exclusive jurisdiction over the matter. *Id.*

{¶16} Further, the issue of whether Ohio Edison provided faulty service resulting in a power surge is expressly governed by Ohio Edison's tariff on file with and approved by PUCO. The General Assembly has given PUCO statutory authority to review and approve tariffs. *Migden-Ostrander v. Pub. Util. Comm.*, 102 Ohio St.3d 451, 2004-Ohio-3924, ¶8, fn. 5. "Public utility tariffs are books or compilations of printed materials filed by public utilities with, and approved by, [PUCO] that contain schedules of rates and charges, rules and regulations, and standards for service." *Id.*

{¶17} In *Hull v. Columbia Gas of Ohio*, 110 Ohio St.3d 96, 2006-Ohio-3666, the Supreme Court of Ohio held, "'it is readily apparent that the General Assembly has provided for commission oversight of filed tariffs, including the right to adjudicate complaints involving customer rates and services.'" *Id.* at ¶20, quoting *Kazmaier, supra*, at 151. *Once approved by PUCO, a tariff has the same binding effect as a law. See Erie Railroad Co. v. Steinberg*, 94 Ohio St. 189 (1916), paragraph four of the syllabus;

*Anthony Carlin Co. v. Hines*, 107 Ohio St. 328 (1923), paragraph one of the syllabus; *Carter v. Am. Tel. & Tel. Co.*, 365 F.2d 486, 496 (5th Cir.1966).

{¶18} Section IV(B) of Ohio Edison's tariff provides:

{¶19} **Continuity.** The Company will endeavor, but does not guarantee, to furnish a continuous supply of electric energy and to maintain voltage and frequency within reasonable limits. The Company shall not be liable for damages which the customer may sustain due to variations in electric service characteristics * * *.

{¶20} In addition, Section X(B) of Ohio Edison's tariff provides:

{¶21} **Limitation of Liability.** The Company shall not be liable for any loss, cost, damage, or expense that the customer may sustain by reason of damage to or destruction of any property, including the loss of use thereof, arising out of, or in any manner connected with * * * high or low voltage * * * except such damages that are caused by or due to *the willful and wanton misconduct of the Company*. (Emphasis added.)

{¶22} In *Hiener*, *supra*, this court addressed limitation-of-liability provisions related to power surges similar to those at issue here. In that case, CEI's tariff provided that CEI would not be liable for damages sustained due to interruptions of service, variations in service characteristics, or high or low voltage whether or not such damages were caused by any negligence of CEI, except such damage that was caused by willful and wanton misconduct of CEI. In *Hiener*, this court held that because the plaintiff's

8

"cause of action [fell] within the parameters of CEI's tariffs, review by any court other than the Supreme Court would amount to usurpation of authority." *Id*. at *4-*5.

{¶23} Similarly in *LaForge, supra*, where the plaintiff's furnace was damaged during a period of low voltage referred to as a "brownout," this court held the complaint was covered by the same tariff at issue in *Hiener*, and thus review by a trial court or an appellate court other than the Supreme Court would result in usurpation of authority. *LaForge* at 741.

{¶24} The Seventh District considered a case quite similar to the one before us in *Valentin v. Ohio Edison*, 7th Dist. Mahoning No. 11 MA 93, 2012-Ohio-2437. In *Valentin*, the plaintiff alleged that Ohio Edison's faulty wire caused a power surge, which in turn ruined various electronics in his home. He further asserted that the substance of his claim is that Ohio Edison was negligent in failing to inspect, *repair*, and maintain its electric feed wire that is attached to his house. Ohio Edison filed a motion to dismiss, arguing that PUCO has the sole authority to hear and determine electric service complaints from its customers. In opposition, the plaintiff argued his complaint asserted a negligence claim and, therefore, did not fall within PUCO's exclusive jurisdiction. In considering the identical tariff provisions as those before us in the instant case, the Seventh District, citing this court's holding in *LaForge, supra*, held: "When the plaintiff's cause of action falls within the parameters of the utility company's tariffs, review by a common pleas court or appellate court would result in usurpation of authority from PUCO and the Ohio Supreme Court." *Valentin* at ¶17. As a result, the Seventh District held that the answer to the first question of the *Allstate* test, i.e., whether PUCO's expertise was required to resolve the dispute, was yes. *Valentin* at ¶19.

**{¶25}** Further, in considering a power-surge claim against an electric utility, the Eighth District in *Pro Se Commercial Properties v. Illuminating Co.*, 8th Dist. Cuyahoga No. 92961, 2010-Ohio-516, stated:

**{¶26}** [T]he plaintiffs argue that CEI is responsible for damages stemming from two alleged power surges. Plaintiffs' claim calls into question the manner by which CEI provided electrical service. In addressing the power surges, it will be necessary to determine whether CEI's response and correction of the problem complied with industry standards. The answers to these questions require the expertise of the PUCO administration because jurors do not have the experience or understanding regarding the distribution of electricity. The determination of issues related to applicable laws and regulations, industry practices and standards, is best accomplished by PUCO with its expert staff technicians familiar with the utility commission provisions. *Id.* at ¶11.

**{¶27}** Because appellants' claim is covered by Ohio Edison's tariff, review of their claim by this court would amount to usurpation of PUCO's exclusive jurisdiction. *Hiener, supra*, at *4-*5.

**{¶28}** In light of the foregoing analysis, we agree with the trial court's finding that, under the first part of the *Allstate* test, the answer to the question whether PUCO's administrative expertise is required to resolve the issue in dispute, the answer is "yes."

**{¶29}** Next, under the second step of the *Allstate* test, we determine whether the act complained of constitutes a practice normally authorized by Ohio Edison.

{¶30} Appellants' complaint alleges that Ohio Edison improperly connected the power lines to the utility pole, which caused the lines to snap, a power surge in appellants' home, and resulting damage to some of their electronics and wiring. As the Seventh District stated in *Valentin*, "[w]hat appellants allege falls under the broad category of service, which is within PUCO's jurisdiction." *Id.* at ¶21. The appellate court in *Valentin* stated that "quality of service complaints fall under PUCO's jurisdiction." *Id.*, citing *Miles, supra*, at ¶12. Further, the court in *Valentin* stated that "[a] power surge is a service-related complaint." *Valentin*, *supra*, citing *Hiener, supra*. Likewise, the court in *Valentin* stated that "a period of low voltage, commonly called a 'brownout,' is also service-related. *Id.*, citing *LaForge, supra*, at 741. The Seventh District in *Valentin* stated: "'When one suffers damages related to events that are purely electrical, * * * the claim is service-related and under PUCO's jurisdiction." *Id.*, quoting *Pro Se Commercial Properties*, *supra*, at ¶15.

{¶31} In *Valentin, supra*, the Seventh District stated the plaintiff's claim that too much power was provided to his home causing damage to his electronics constituted a claim that there was a problem with his service resulting from a faulty wire and power surge. Thus, the court held the act complained of constituted a practice normally authorized by the utility, satisfying the second step of the *Allstate* test. *Valentin, supra*, at ¶22.

{¶32} As in *Valentin*, here, appellants claimed that too much power was provided to their home causing damage to their electronics. In other words, appellants claimed there was a problem with their service that resulted from Ohio Edison's improper connection of the power lines to the utility pole. As a result, the act

11

complained of, i.e., the connection of the power lines to the pole, constituted a practice normally authorized by the utility.

{¶33} Moreover, the practice of repairing and replacing utility poles and power lines is specifically authorized by OAC 4901:1-10-27. That section of the Ohio Administrative Code provides:

{¶34} Each electric utility shall establish and maintain written programs, procedures, and schedules for the * * * repair and replacement of its transmission and distribution circuits and equipment. These programs shall establish preventative requirement for the electric utility to maintain safe and reliable service.

{¶35} For this additional reason, the repair and replacement of an electric utility's utility poles and the attachment of power lines to those poles are practices normally authorized by Ohio Edison.

{¶36} Further, contrary to appellants' argument that they could not recover their damages if they filed their complaint with PUCO, R.C. 4905.61 provides:

{¶37} If any public utility * * * does * * * any act * * * prohibited by Chapters 4901., 4903., 4905., 4907., 4909., 4921., 4923., and 4927. of the Revised Code, or declared to be unlawful, or omits to do any act * * * required by the provisions of those chapters, * * * the public utility * * * is liable to the person * * * injured thereby in treble the amount of damages sustained in consequence of the violation, failure, or omission.

12

**{¶38}** Thus, if appellants are able to establish their claims before the PUCO and the PUCO determines the companies' conduct is prohibited by R.C. 4905.61, appellants can then seek an award of treble damages against them in court. *DiFranco v. First Energy*, 11th Dist. Geauga No. 2010-G-2990, 2011-Ohio-5434, ¶69, reversed on other grounds at 134 Ohio St.3d 144, 2012-Ohio-5445. Thus, contrary to appellants' argument, R.C. 4905.61 provides for an award of damages to claimants damaged by a public utility.

**{¶39}** In summary, no matter how their claim is labeled, appellants are complaining about a service regularly provided by Ohio Edison. In view of the foregoing analysis, we agree with the trial court's finding that, under the second part of the *Allstate* test, the answer to the question whether the act complained of constituted a practice normally authorized by Ohio Edison, the answer is also "yes."

**{¶40}** We therefore hold that because both questions of the *Allstate* test are properly answered in the affirmative, the trial court did not err in finding that appellants' claim is within PUCO's exclusive jurisdiction.

**{¶41}** For the reasons stated in this opinion, appellants' assignment of error is overruled. It is the order and judgment of the court that the judgment of the Ashtabula County Court of Common Pleas is affirmed.


TIMOTHY P. CANNON, P.J.,

THOMAS R. WRIGHT, J.,

concur.

13