OPINION
{¶ 1} Appellants, Ronald Duncan and Laura Duncan, appeal from a judgment of the Geauga County Common Pleas Court entering summary judgment against them. On review, we affirm the judgment entry of the trial court.
 {¶ 2} On January 2, 2003, around noon, Ronald Duncan ("Duncan") was approaching the entrance to Pizza Hut in Middlefield, Ohio. It was cold and windy that day and, according to Duncan, had been "probably sleeting." His purpose in going to the Pizza Hut was to have lunch with his wife, Laura Duncan, who was an employee of *Page 2 
Pizza Hut at that time. Appellant, Hallrich, Inc. ("Hallrich"), operates that Pizza Hut restaurant as a lessee in a shopping plaza owned by a local bank.
 {¶ 3} Approximately one-half hour before, Duncan and his wife had entered the Pizza Hut, using the handicapped ramp to gain access to the restaurant. The handicapped ramp and the entrance area were salted at that time and they encountered no difficulty. Duncan dropped off his wife, ran an errand, and, then, came back to the restaurant to join his wife for lunch. This time, he parked his car in a different location and did not use the handicapped ramp, but intended to enter the restaurant from the sidewalk in front of the building.
 {¶ 4} Duncan stepped up onto the sidewalk from the parking lot, fell on black ice on the sidewalk, and injured his knee. The evidence was conflicting as to whether the area of the sidewalk on which Duncan fell had been salted prior to his fall.
 {¶ 5} Duncan and his wife filed a complaint and an amended complaint in the trial court, naming Hallrich and two other defendants as entities responsible for Duncan's injury. Duncan's claims against those two other defendants were resolved in the trial court and are not part of this appeal.
 {¶ 6} Hallrich filed an answer to Duncan's complaint and to his amended complaint. Subsequently, it filed a motion for summary judgment, to which Duncan filed a brief in opposition.
 {¶ 7} The trial court rendered summary judgment in favor of Hallrich, from which Duncan and his wife have pursued this appeal. They raise the following assignment of error: *Page 3 
 {¶ 8} "Summary judgment is inappropriate where the facts establish superior knowledge of ice and snow conditions by the property owner."
 {¶ 9} Pursuant to Civ.R. 56(C), summary judgment is proper when (1) the evidence shows "that there is no genuine issue as to any material fact" to be litigated, (2) "the moving party is entitled to judgment as a matter of law," and (3) "it appears from the evidence * * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence * * * construed most strongly in the party's favor."
 {¶ 10} A trial court's decision to grant a motion for summary judgment is reviewed by an appellate court under a de novo standard of review.Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. A de novo review requires the appellate court to conduct an independent review of the evidence before the trial court without deference to the trial court's decision. Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704, 711.
 {¶ 11} Appellants refer to Hallrich as the "property owner" in their assignment of error, but the record shows that it was the occupier/lessee of the premises in a shopping plaza owned by a local bank.
 {¶ 12} "For purposes of premises liability, the Restatement of Torts defines a `possessor' as `a person who is in occupation of the land with the intent to control it * * *.' Restatement of the Law 2d, Torts (1965) 170, Section 328E. Possession and control are therefore two required elements of premises liability. The control necessary as the basis for tort liability implies the power and the right to admit people to the premises and *Page 4 
to exclude people from it and the substantial exercise of that right and power.' Mitchell v. Cleveland Elec. Illum. Co. (1987), 30 Ohio St.3d 92,94, 30 OBR 295, 296, 507 N.E.2d 352, 354." Monnin v. Fifth Third Bank ofMiami Valley, N.A. (1995), 103 Ohio App.3d 213, 222.
 {¶ 13} Thus, rules regarding premises liability apply equally to property owners and lessees who are in possession and control of the property. Therefore, we proceed with an analysis of premises liability, because Hallrich was in possession and control of the restaurant property.
 {¶ 14} Further, it is not disputed that Duncan was a business invitee of Hallrich. As a business invitee, Hallrich owed him a duty of reasonable care and, in the exercise of that duty, to maintain the premises in a safe condition. Light v. Ohio University (1986),28 Ohio St.3d 66, 68.
 {¶ 15} Duncan alleged in his complaint that the cause of his fall was an unnatural accumulation of black ice on the sidewalk. Alternatively, he argued in the trial court that, while the black ice on the sidewalk was a natural accumulation of ice, Hallrich had a duty to salt the sidewalk to prevent the ice buildup and a violation of that duty constituted negligence. In this court, Duncan maintains that the black ice on the sidewalk was not visible and, owing to the superior knowledge of Hallrich regarding the condition of the sidewalk, it had a duty to salt the sidewalk to prevent the buildup of black ice.
 {¶ 16} Black ice is a phenomenon that is frequently encountered by drivers or pedestrians who live in Northeast Ohio. *Page 5 
 {¶ 17} A party seeking summary judgment on the ground that the nonmoving party cannot prove its case bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claims. The moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) that affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. Dresher v. Burt (1996), 75 Ohio St.3d 280,293.
 {¶ 18} Hallrich contends that Duncan's fall was caused by a natural accumulation of ice for which it may not be held liable.
 {¶ 19} We first address the threshold question whether the black ice was a natural accumulation of ice. If it was a natural accumulation of ice, then an owner or occupier of land does not owe a duty to a business invitee to warn of the danger associated with it. Brinkman v. Ross
(1993), 68 Ohio St.3d 82, 85. "The underlying rationale * * * is that everyone is assumed to appreciate the risks associated with natural accumulations of ice and snow and, therefore, everyone is responsible to protect himself or herself against the inherent risks presented by natural accumulations of ice and snow." Id. at 84.
 {¶ 20} This court and other courts have held that an accumulation of ice does not become an unnatural accumulation simply by virtue of water collecting in a depression in a sidewalk and subsequently freezing.Belavich v. Newcomb, 11th Dist. No. 2004-G-2584, 2005-Ohio-1890, at ¶ 17. (citations omitted.) Further, an unnatural accumulation is caused by other than "meteorological forces:" *Page 6 
 {¶ 21} "An unnatural accumulation of ice and snow is one that has been created by causes and factors other than meteorological forces of nature such as the inclement weather conditions of low temperature, strong winds and drifting snow." Id. (Citation omitted.)
 {¶ 22} In the instant case, lacking any evidence to the contrary, we conclude that the black ice on the sidewalk of Hallrich's restaurant on the day in question was a natural accumulation of ice. See, also,Burton v. CFA Med. Bldg. Garage (June 17, 1999), 8th Dist. No. 74335, 1999 Ohio App. LEXIS 2776, at *8.
 {¶ 23} The Burton case is instructive on the principle that black ice is a natural accumulation. It also stands for the proposition that, unless the person in control of the premises creates a condition that is more dangerous than if the premises had been left in their natural state, liability will not attach. As stated by the Eighth Appellate District:
 {¶ 24} "Property owners who gratuitously inspect their premises do not thereby expose themselves to liability for natural accumulations of ice and snow so long as they do not negligently create a condition that is more dangerous than would have been the case had the property been left in its original state." Id. at *9.
 {¶ 25} In the instant case, there is no evidence that a Hallrich employee did anything to create a more dangerous condition on its sidewalk on the day in question.
 {¶ 26} Duncan attempts to distance himself from the general rule regarding nonliability for a fall on a natural accumulation of ice by arguing that the general rule of Brinkman is based on the assumption that the ice and/or snow hazard is so obvious that a person can reasonably be expected to discover it. This "equal knowledge" that a business occupier of land and a business invitee have regarding icy conditions does not *Page 7 
apply in the case of black ice, argues Duncan, because black ice cannot be seen and, therefore, as between the business occupier and the business invitee, the business invitee is at a disadvantage regarding icy conditions caused by black ice. He likens it to a latent defect that is not obvious to the average person and about which the business owner has a duty to warn its customers. See Armstrong v. Best Buy Co.,Inc., 99 Ohio St.3d 79, 2003-Ohio-2573, at ¶ 5.
 {¶ 27} Thus, Duncan argues that the long-standing rule of Sidle v.Humphrey (1968), 13 Ohio St.2d 45, paragraph two of the syllabus, that "[t]he dangers from natural accumulations of ice and snow are ordinarily so obvious and apparent that an occupier of premises may reasonably expect that a business invitee on his premises will discover those dangers and protect himself against them," does not apply in this case due to the lack of obviousness of the black ice.
 {¶ 28} Duncan also attempts to distinguish this case from the holding in Debie v. Cochran Pharmacy-Berwick, Inc. (1967), 11 Ohio St.2d 38, paragraph one of the syllabus:
 {¶ 29} "Where the owner or occupier of business premises is not shown to have notice, actual or implied, that the natural accumulation of snow and ice on his premises has created there a condition substantially more dangerous to his business invitees than they should have anticipated by reason of their knowledge of conditions prevailing generally in the area, there is a failure of proof of actionable negligence."
 {¶ 30} Duncan argues that the holding in the Debie case is inapplicable to this case, because Hallrich's employees did have notice and knowledge of the black ice condition that Duncan did not have, but they failed to act on their knowledge by taking *Page 8 
reasonable precautions to prevent customers such as Duncan from falling on the black ice. Duncan cites to the language of the Supreme Court of Ohio in that case: "`the liability * * * must be predicated upon a superior knowledge concerning the dangers of the premises to persons going thereon.'" Id. at 40, quoting 38 American Jurisprudence 757, Negligence, Section 97. Duncan argues that Hallrich possessed the "superior knowledge" that would make it liable for failing to provide reasonable care to prevent customers from falling on black ice.
 {¶ 31} Duncan buttresses his argument regarding the "superior knowledge" that Hallrich must have had regarding the black ice by referring to the evidence that part of the walkways had been salted, so they all should have been salted:
 {¶ 32} "[Hallrich] employees had salted a partial area of the sidewalk immediately in front of the entrance. At a minimum it knew, or should have known, of the hazard. [Hallrich], with superior knowledge had a duty to correct or warn of the hazard."
 {¶ 33} We note that there is no assertion in this argument that, by salting only part of the entranceway, Hallrich was creating a more dangerous condition in the unsalted portion. Cf. Burton v. CFA Med.Bldg. Garage, supra. Had such an assertion been made, we would have difficulty accepting it in light of the principle espoused in theBurton decision that, unless one changes the natural state of the premises and creates a more dangerous condition than existed in the natural state, liability does not attach.
 {¶ 34} Therefore, we shall confine our discussion in this part of our analysis to appellants' argument that the Hallrich employees had superior knowledge that should have caused them to take precautions against the black ice. *Page 9 
 {¶ 35} As stated by the trial court, "[t]here is absolutely no evidence that [appellee] Hallrich through its employees or anyone was aware that there was `black ice' on the sidewalk where [Duncan] fell."
 {¶ 36} Therefore, even if we were to accept Duncan's argument that superior knowledge of black ice conditions will take this case out the realm of the usual holding of nonliability in slip-and-fall cases on snow and/or ice, there is lacking the evidence that Hallrich, or any of the employees, possessed such knowledge. The fact that they may have salted part of the sidewalk, and not the part on which Duncan fell, merely implies they knew that slippery conditions existed, not that they had notice of black ice on the entire sidewalk. Taking the precaution to salt a sidewalk is a reasonable measure when there is precipitation during the winter season. It does not necessarily put one on notice of black ice. Thus, the trial court correctly found that there was lacking any evidence of superior knowledge of a black ice condition on the sidewalk.
 {¶ 37} The assignment of error is without merit.
 {¶ 38} The judgment entry of the Geauga County Court of Common Pleas is affirmed.
 CYNTHIA WESTCOTT RICE, P.J., COLLEEN MARY OTOOLE, J., concur. *Page 1