[Cite as *Crawford v. Kirtland Local School Dist. Bd. of Edn.*, 2018-Ohio-4569.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**LAKE COUNTY, OHIO**

| | | |
|---|---|---|
| MOLLY CRAWFORD, | **:** | **O P I N I O N** |
| Plaintiff-Appellant, | **:** | |
| - vs - | **:** | **CASE NO. 2018-L-010** |
| KIRTLAND LOCAL SCHOOL DISTRICT BOARD OF EDUCATION, et al., | **:** | |
| Defendants-Appellees. | **:** | |
| | **:** | |

Civil Appeal from the Lake County Court of Common Pleas, Case No. 2016 CV 002121.

Judgment: Affirmed.

*Caryn M. Groedel,* Caryn Groedel & Associates Co., L.P.A., 31340 Solon Road, Suite 27, Cleveland, OH 44139 (For Plaintiff-Appellant).

*Mark S. Fusco, Christine Tomko Cossler* and *James Michael McWeeney,* Walter & Haverfield LLP, The Tower at Erieview, 1301 East Ninth Street, Suite 3500, Cleveland, OH 44114 (For Defendant-Appellee, Kirtland Local School District Board of Education).

*Mark S. Fusco, Christine Tomko Cossler* and *James Michael McWeeney,* Walter & Haverfield LLP, The Tower at Erieview, 1301 East Ninth Street, Suite 3500, Cleveland, OH 44114; and *Todd C. Hicks* and *Brandon D.R. Dynes,* Thrasher, Dinsmore & Dolan, LPA, 100 Seventh Avenue, Suite 150, Chardon, OH 44024 (For Defendant-Appellee, Becky Malinas).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, Molly Crawford, appeals the judgment of the Lake County Court of Common Pleas dismissing in part her gender discrimination claim against appellees,

Kirtland Local School District Board of Education ("the Board") and Becky Malinas, and granting summary judgment in favor of appellees as to the remaining allegations of Crawford's claim. At issue is whether the trial court erred in entering its judgment. For the reasons that follow, we affirm.

{¶2} In August 2015, the Board hired Crawford as an elementary school intervention specialist, i.e., special education teacher, under a one-year limited contract from August 2015 through June 2016. Malinas, the Board's Director of Pupil Services and supervisor of all Kirtland special education teachers, and Chad Van Arnhem, the elementary school principal, were part of the interview team that decided to interview Crawford and, after her interview, were involved in her hiring.

{¶3} One of Crawford's job duties was to write Individualized Education Plans ("IEPs") for her special education students pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. Sec. 1400, et seq. IEPs are education plans tailored to the learning needs of each special education student. And special education teachers must collect and compile student data regarding each student's progress to assess whether they are meeting their IEP goals.

{¶4} Malinas stated in her deposition that at the start of Crawford's employment, Malinas helped her prepare her IEPs, although writing IEPs was one of Crawford's duties as a special education teacher. However, as the 2015-2016 school year progressed, Malinas determined that Crawford's IEPs were below expectations. Malinas helped Crawford draft her IEPs, but she did not improve in this area. Instead, Crawford continued to write substandard IEPs, which Malinas was routinely required to correct.

2

**{¶5}** Malinas stated that, as with other special education teachers under her supervision, she evaluated Crawford's classroom performance per the evaluation procedures contained in the collective bargaining agreement ("CBA") between the Board and Crawford's union. The CBA incorporates the teacher evaluation procedures established in the Ohio Teacher Evaluation System ("OTES") under the Ohio Revised Code.

**{¶6}** Per the CBA, Malinas evaluated Crawford via informal walk-throughs six times between October 2015 and March 2016. She also conducted two formal observations, one in October 2015 and a second in March 2016, and – based on concerns with Crawford's performance – a third in April 2016.

**{¶7}** Malinas stated that Crawford had problems with classroom management and wrote substandard IEPs. Further, at post-conference meetings after her formal observations, Crawford failed to provide her with required data regarding student progress on their IEP goals. Malinas noted in Crawford's OTES Performance Rubric, "Data has been requested several times by the Director [Malinas]. Molly did not turn in the data that drove IEP goals and informed student Progress Reports." Malinas maintained that, during her one-year contract, Crawford failed to remedy these serious deficiencies in her performance.

**{¶8}** Thus, on May 3, 2016, Malinas and Elementary School Principal, Mr. Arnhem, met with Crawford in a final review meeting to discuss her poor performance and her potential "Ineffective" rating on the OTES Performance Rubric. At that meeting and in follow-up correspondence, Malinas explained to Crawford that her rating could be raised if she provided the required student data for tracking a student's progress, which all teachers should be collecting and compiling throughout the school year. However,

Malinas said Crawford never gave her this data. She was the only special education teacher during the 2015-2016 school year, male or female, who failed to provide Malinas with the required student progress data.

{¶9} As a result, on May 10, 2016, Malinas rated Crawford "Ineffective," noting that "Molly would benefit from further professional development that provided information on Special Education policies, IEP writing and classroom management." In fact, Crawford was the only teacher Malinas rated as Ineffective among all teachers that year, male and female. Based on this rating, former Kirtland Superintendent, Steve Barrett, recommended to the Board that it non-renew Crawford's one-year contract, and the Board voted to non-renew her contract.

{¶10} After Crawford's non-renewal, Kirtland filled her position at the elementary school with a female teacher, Barbara Markovic, who was previously assigned to the high school. Markovic filed a grievance per the CBA regarding her assignment to the elementary school and, as a result of the grievance, she was assigned to a high school position. Following Markovic's re-assignment, one of the Board's long-term substitute teachers, Dale Clark, was automatically placed into Crawford's former position per the CBA.

{¶11} Clark excelled in writing IEPs and worked in this elementary school position for the 2016-2017 school year. He also provided Malinas with the required student progress data. In his performance rubric, Malinas stated that Clark "uses current data collection, IEP goals and objectives/benchmarks to drive his instruction." As a result, Malinas gave him a "Skilled" rating under the OTES for that year. After the 2016-2017 school year, Clark applied for and received a special education teaching

4

position at the middle school. A female teacher, Jamie Kamensky, now works in the position Crawford held during the 2015-2016 school year.

{¶12} In the 2015-2016 school year, David Beans was hired as a middle school special education teacher. He was skilled in writing IEPs and provided Malinas with the required student progress data. In his performance rubric, Malinas stated "Mr. Beans does incorporate diagnostic data into his instruction. He uses iReady and MAP data to help drive instruction. David studies the data and is able to communicate to Team members each student's level of ability and areas that need to be reinforced."

{¶13} While employed by Kirtland, Crawford was a member of the union, and her employment was subject to the CBA between the Board and the union. The CBA provides that the union is "the exclusive representative of all the non-supervisory, certificated/licensed personnel" * * * "for the purpose of negotiations, wages, hours, fringe benefits, [and] terms and conditions of employment * * *."

{¶14} The CBA governs teacher evaluations. Article VI of the CBA provides that an Evaluation Committee shall draft a "standards-based teacher evaluation policy" to be adopted and included in the CBA "through a memorandum of understanding." This memorandum of understanding establishes the teacher evaluation procedures in detail, including the rubric used by evaluators, performance ratings, the number and duration of observations, observation conferences, and evaluation procedures used when the board intends not to re-employ a limited contract teacher.

{¶15} The CBA also contains exclusive remedies union members must use to resolve their contract rights, including claims based on teacher evaluations. The CBA defines a grievance as a written claim filed by a licensed employee alleging a violation of a term of the CBA, board policies, rules, or fair treatment. The grievance procedure

5

provides that when the grievant fails to file the grievance or appeal the grievance within the time limits established by the CBA, the grievance shall be deemed waived.

{¶16} Crawford testified in her deposition that her discrimination claim was based in part on allegations that she was not evaluated fairly by Malinas, as opposed to her fellow special education teachers, Beans, who was hired at the same time Crawford was hired, and Clark. Crawford testified that, pursuant to the CBA, she was subject to walk-through observations and evaluations with a summative review at the end of the process. She said that, under the CBA, the number of walk-throughs and evaluations was limited, and they could only be conducted by the teacher's evaluator, who, in her case was Malinas.

{¶17} On May 16, 2016, the union filed a grievance on behalf of Crawford, claiming that Malinas violated the memorandum of understanding on teacher evaluations. The Board denied the grievance, but Crawford and the union did not appeal it through arbitration.

{¶18} Instead, on December 19, 2016, Crawford filed a complaint against the Board and Malinas, alleging they discriminated against her because of her gender. In her deposition, Crawford testified her claim is based on three sets of allegations. First, she testified Malinas treated her with a "cold, clipped, curt, no eye contact" demeanor compared to the "very flirtatious, open, friendly" manner in which she treated Beans and Clark. Second, Crawford said she was not provided with the same teaching materials as Beans, i.e., a laptop and certain books. Third, she said she was treated unfairly with respect to Malinas' informal walk-through observations of Crawford, Malinas' formal evaluations of her, and Malinas' feedback.

{¶19} The Board filed an answer denying the material allegations of the complaint.

{¶20} Thereafter, the parties exchanged discovery and took several depositions. Subsequently, the Board filed a motion to dismiss Crawford's claim for lack of subject matter jurisdiction pursuant to Civ.R. 12(B)(1). The parties also filed competing summary-judgment motions.

{¶21} In December 2017, the trial court entered judgment dismissing Crawford's claim for lack of subject-matter jurisdiction to the extent it related to her observations, evaluations, and rating as compared to the observations, evaluations, and rating of Beans and Clark on the ground that the evaluation process is governed exclusively by the CBA. Further, the trial court denied Crawford's motion for summary judgment and entered summary judgment in favor of the Board and Malinas on the balance of Crawford's claim due to her failure to identify a genuine issue of material fact.

{¶22} Crawford appeals the trial court's judgment, asserting four assignments of error. Because the first two are related, they are considered together. They allege:

{¶23} "[1.] The trial court erred in finding that part of Crawford's discrimination claim is pre-empted by her Collective Bargaining Agreement.

{¶24} "[2.] The trial court erred by disregarding some evidence based on its erroneous conclusion that that particular evidence requires interpretation of the CBA and MOU."

{¶25} "A motion to dismiss for lack of subject-matter jurisdiction is made pursuant to Civ.R. 12(B)(1), and '[t]he standard of review for a dismissal pursuant to Civ.R. 12(B)(1) is whether any cause of action cognizable by the forum has been raised in the complaint.'" *Jones v. Ohio Edison Co.*, 11th Dist. Ashtabula No. 2014-A-0015,

7

2014-Ohio-5466, ¶6, quoting *State ex rel. Bush v. Spurlock*, 42 Ohio St.3d 77, 80 (1989). "'"[I]n determining whether the plaintiff has alleged a cause of action sufficient to withstand a Civ.R. 12(B)(1) motion to dismiss, the trial court is not confined to the allegations of the complaint and it may consider material pertinent to such inquiry without converting the motion into one for summary judgment."'" *Jones, supra*, quoting *Kinder v. Zuzak*, 11th Dist. Lake No. 2008-L-167, 2009-Ohio-3793, ¶10, quoting *McHenry v. Industrial Com. of Ohio*, 68 Ohio App.3d 56, 62 (4th Dist.1990). Further, we review an appeal of a dismissal for lack of subject-matter jurisdiction under Civ.R. 12(B)(1) de novo. *Manigault v. Chilson,* 11th Dist. Trumbull No. 2015-T-0037, 2015-Ohio-5223, ¶8.

{¶26} Under her first assigned error, Crawford argues that, because she asserts statutory rights, rather than contractual rights, she was not required to exhaust her remedies under the CBA prior to filing suit. However, this argument is irrelevant because appellees do not argue, and the trial court did *not* find, that exhaustion of remedies was required. Instead, the trial court dismissed for lack of subject-matter jurisdiction that part of Crawford's claim that required analysis and interpretation of the CBA, which is governed by the grievance procedure contained in that agreement, which includes final and binding arbitration.

{¶27} In support of this finding, the trial court relied on R.C. 4117.10(A) of the Public Employees' Collective Bargaining Act, which provides:

{¶28} An agreement between a public employer and an exclusive representative entered into pursuant to this chapter governs the wages, hours, and terms and conditions of public employment covered by the agreement. If the agreement provides for a final and binding arbitration of grievances, public employers, employees, and employee organizations are subject solely to that grievance procedure.

8

{¶29} Further, "if a party asserts claims that arise from or depend on the collective bargaining rights created by R.C. Chapter 4117, that chapter's remedies are exclusive." *Franklin Cty. Law Enforcement Assn. v. Fraternal Order of Police, Capital City Lodge No. 9*, 59 Ohio St.3d 167 (1991), paragraph two of the syllabus. Thus, the dispositive test in determining whether the common pleas court has jurisdiction over a claim asserted by a party to a CBA is whether the party's claims "arise from or depend on the collective bargaining rights" outlined by Chapter 4117. *Chenevey v. Greater Cleveland Regional Transit Auth.*, 8th Dist. Cuyahoga No. 99063, 2013-Ohio-1902, ¶18. As in the present case, in *Chenevey*, the plaintiff, in attempting to avoid dismissal on jurisdictional grounds, argued his claim was brought pursuant to statutory rights, not any rights under the CBA, and he was thus not required to pursue the grievance procedure set forth in the CBA. The Eighth District disagreed, affirming the trial court's dismissal under R.C. 4117.10(A). The appellate court stated:

> {¶30} In order to prove the alleged discrimination, Chenevey must show that he was qualified for the positions for which he applied. The determination of his qualifications necessarily requires an interpretation of the 2006 eligibility list contained within the CBA * * *. The expiration date of the eligibility list is determinative, and an analysis of the CBA is necessary in order to discern whether RTA acted in accordance with the terms or the conditions of the CBA or whether its conduct was wrongful, or discriminatory. *Chenevey* at ¶28.

{¶31} Even when the rights asserted by a plaintiff are created by state law, if the application of the law is dependent on an analysis or interpretation of a collective bargaining agreement, the trial court lacks subject matter jurisdiction over the matter. *Guden v. Western Reserve Psychiatric Hosp.*, 10th Dist. Franklin No. 00AP-912, 2001 WL 664389, *3 (June 14, 2001).

9

{¶32} Crawford argued her teaching contract was non-renewed based on her gender. As evidence that she was not evaluated fairly and that appellees treated other non-protected persons more favorably than her, and thus were motivated by gender, the trial court summarized Crawford's arguments, as follows:

{¶33} Plaintiff alleges that:

{¶34} she had one more formal observation and one more informal observation than David Beans ("Beans"), her "male comparator";

{¶35} Malinas wrote negative comments on Plaintiff's reviews after the fact without showing Plaintiff, and otherwise "blindsided" Plaintiff;

{¶36} Malinas gave Plaintiff an undeserved negative evaluation, and gave Beans and Dale Clark ("Clark"), the teacher in Plaintiff's classroom in the 2016-2017 school year, undeserved excellent evaluations;

{¶37} Malinas gave Plaintiff a negative rating (when Malinas could have chosen not to rate her) and gave Beans and Clark undeserved positive ratings; and

{¶38} Defendants non-renewed Plaintiff's contract based on her evaluation, but retained Beans and Clark, despite their shortcomings.

{¶39} In finding it did not have subject-matter jurisdiction over this part of Crawford's claim, the trial court stated, as follows:

{¶40} The evaluation process, including the number of observations, the procedures, the criteria, and the ratings are governed by the CBA and the Memorandum of Understanding ("MOU") incorporated in the CBA. In order to determine, for example, whether the number of observations Malinas performed was inconsistent with the CBA, or whether Malinas could have chosen not to rate Plaintiff, the trier of fact would have to apply the CBA. Similarly, whether Malinas evaluated Plaintiff, Beans, and Clark according to the procedures and criteria of the CBA and the MOU requires application of the CBA. Accordingly, this court lacks jurisdiction over Plaintiff's gender discrimination claim to the extent it depends on allegations regarding her observations, evaluation, and rating as compared to the observations, evaluations, and ratings of Beans and Clark, because the claim arises out of or depends on rights in the CBA.

10

{¶41} Crawford does not dispute that, as a union member, she was subject to the CBA; that her claim was based in part on allegations that she was treated unfairly with respect to her evaluations; that she complained to her union about the evaluations; and that the union even filed a grievance on her behalf challenging her evaluations. The determination of whether the Board complied with the evaluation procedures in the CBA or discriminated against her required application and interpretation of the CBA. Thus, Crawford's evaluation claim is a grievance, and, as a result, the grievance procedure, including final and binding arbitration, was her sole remedy, and the trial court did not err in finding it lacked subject matter jurisdiction over this part of her claim and in dismissing it.

{¶42} Under Crawford's second assignment of error, she argues the trial court abused its discretion in disregarding certain evidence in determining whether it had subject-matter jurisdiction regarding the evaluation aspect of her claim. The evidence to which Crawford is referring is Clark's alleged deficiency in communication, Crawford's alleged deficiencies in classroom management, drafting IEPs, and her failure to provide student data. However, the court did not disregard this evidence, but rather found it related to issues that were beyond the court's jurisdiction. The trial court stated:

> {¶43} Plaintiff alleges that Clark engaged in the same or equivalent conduct because he needed to improve his communication with parents. However, whether Clark's alleged deficiency in communication was equivalent to Plaintiff's alleged deficiencies in classroom management and drafting IEPs (or her failure to provide student data), and whether Defendants valued these two skills equally, requires application of the evaluation criteria in the CBA and MOU, and therefore is beyond the court's jurisdiction.

{¶44} Further, Crawford argues this evidence did not require application of the CBA because none of these matters is mentioned in the CBA. However, to the

11

contrary, the Teacher Evaluation Memorandum of Understanding, which is incorporated into the CBA, contains detailed provisions regarding evaluation procedures and performance assessments.

**{¶45}** Crawford's first and second assignments of error are without merit.

**{¶46}** For her third assigned error, Crawford alleges:

**{¶47}** "The trial court erred in granting summary judgment for Appellees, and denying Crawford's motion for summary judgment on Crawford's gender discrimination claim."

**{¶48}** A trial court's decision to grant a motion for summary judgment is reviewed by an appellate court under a de novo standard of review. *Duncan v. Hallrich, Inc.*, 11th Dist. Geauga No. 2006-G-2703, 2007-Ohio-3021, ¶10, citing *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996).

**{¶49}** Pursuant to Civ.R. 56(C), summary judgment is proper if (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

**{¶50}** The party seeking summary judgment initially bears the burden of informing the trial court of the basis for the motion and identifying portions of the record demonstrating an absence of genuine issues of material fact as to the essential elements of the nonmoving party's claims. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). The movant must point to some evidence in the record of the type listed in

Civ.R. 56(C) in support of his motion. *Id.* These evidentiary materials must show that there is no genuine issue as to any material fact. *Id.* A moving party does not discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmovant has no evidence to prove his case. *Id.* The assertion must be backed by evidence. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. *Id.* If this burden is satisfied, the nonmoving party has the burden, as set forth in Civ.R. 56(E), to offer specific facts showing a genuine issue for trial. *Id.*

{¶51} Crawford argues the trial court erred in granting summary judgment in favor of appellees because it erroneously found that she did not establish a prima facie case of gender discrimination.

{¶52} Crawford filed her gender discrimination claim pursuant to R.C. 4112.02, which provides it is an unlawful discriminatory practice: "(A) For any employer, because of the * * * sex * * * of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."

{¶53} "When a plaintiff alleges gender discrimination in violation of R.C. 4112.02, she bears the initial burden of presenting either direct evidence of discrimination, or establishing discriminatory intent indirectly through the four-part test set forth in *Barker v. Scovill, Inc.*, 6 Ohio St.3d 146 (1983), adopted from the standards established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Weber v. Ferrellgas, Inc.*, 11th Dist. Trumbull No. 2015-T-0071, 2016-Ohio-4738, ¶24. "The analysis requires that the plaintiff-employee demonstrate that: (1) she is a member of a

13

protected class, (2) she suffered an adverse employment action, (3) she was qualified for the position, and (4) she was replaced by an individual outside the protected class, or that a comparable (similarly-situated), non-protected person was treated more favorably." *Id.* In order to be similarly situated, "'the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating * * * circumstances that would distinguish their conduct [or the] employer's treatment of them for it.'" *Poppy v. Willoughby Hills City Council*, 11th Dist. Lake No. 2004-L-015, 2005-Ohio-2071, ¶39, quoting *Mitchell v. Toledo Hospital*, 964 F.2d 577, 583 (6th Cir.1992).

{¶54} Crawford tacitly concedes that she does not have direct evidence of appellees' alleged discriminatory intent. Thus, like the trial court, we must analyze her claim under the McDonnell Douglas framework. There is no dispute that Crawford was a member of a protected class, i.e., gender, under the first prong; that she suffered an adverse employment action under the second prong in that she was non-renewed in her position with the Board; or that she was qualified for her position under the third prong in that she has a special education license.

{¶55} While the parties do not dispute that Crawford was non-renewed under the second prong of the McDonnell Douglas test, she argues that Beans and Clark were treated more favorably in numerous ways, which the court found fell into two general categories – Malinas provided them with materials and opportunities that she did not provide to Crawford, and Malinas was friendlier to them than to Crawford. However, as the trial court found, even if these allegations were true, they are not "materially adverse employment decisions" under this prong of the McDonnel Douglas test.

14

{¶56} Federal courts have repeatedly held that such pre-termination actions do not qualify as materially adverse employment decisions. *Novotny v. Elsevier*, 291 Fed.Appx. 698, 703 (6th Cir.2008) (close scrutiny of plaintiff's calendar, leaving her off of out-of-office e-mails, and placing her on a corrective action plan, although her supervisor did not take any of these actions against her male counterparts, was not discriminatory treatment); *Virostek v. Liberty Twp. Police Dept./Trustees*, 14 Fed.Appx. 493, 504 (6th Cir.2001) (not assigning the plaintiff equipment and failing to give her preferred shifts and praise for her work was not discriminatory treatment).

{¶57} Thus, while Crawford was non-renewed, thus satisfying the second element of the McDonnel Douglas test, this was the only adverse employment action to which she was subjected.

{¶58} Finally, the court found that Crawford failed to establish the fourth element of a prima facie case. The trial court stated:

> {¶59} Regarding Plaintiff's replacement, the only evidence in the record is that the Board assigned Barbara Markovic ("Markovic") to replace Plaintiff. The fact that Markovic [later] transferred from Plaintiff's position at the elementary school to a position at the high school, and that Clark replaced *Markovic*, does not mean that Clark replaced Plaintiff. Accordingly, Plaintiff cannot establish that she was replaced by a male teacher.

{¶60} Alternatively, Crawford argues that Beans and Clark were comparable similarly-situated teachers who engaged in the same or equivalent conduct, but their teaching contracts were renewed, while hers was not. In order to satisfy this element, Crawford was required to show that the proposed comparators were similar in all relevant respects and had engaged in acts of comparable seriousness. *Ames v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 14AP-119, 2014-Ohio-4774, ¶42. "In practical terms, two employees are not similarly-situated in all relevant respects if there

is a meaningful distinction between them which explains their employer's differential treatment of them." *Poppy, supra,* at ¶41.

{¶61} With respect to Beans, Crawford argues that he engaged in the same or equivalent conduct because he allegedly communicated with a student's grandmother without permission from the student's parent, in violation of the Family Educational Rights and Privacy Act ("FERPA"), and because he, i.e., Beans, admitted that he did not know how to draft IEPs. With respect to Beans, the trial court found:

> {¶62} Plaintiff has provided no argument or evidence that Beans' alleged violation of FERPA was equivalent to her alleged deficiencies in classroom management or drafting IEPs (or her failure to provide student data). Further, the only "evidence" that Beans had the same deficiencies in writing IEPs is an email chain between Beans and Malinas in which Beans stated that the student "has been receiving WILSON from Ms. Skiris" who is on medical leave, and that Beans did not know how to write a WILSON goal. Accordingly, Plaintiff has not established that Beans was similarly-situated. * * *

{¶63} With respect to Clark, Crawford argues that he engaged in the same or equivalent conduct because he needed to improve his communication with parents. With respect to Clark, the trial court found:

> {¶64} [W]hether Clark's alleged deficiency in communication was equivalent to Plaintiff's alleged deficiencies in classroom management and drafting IEPs (or her failure to provide student data), and whether Defendants valued these two skills equally, requires application of the evaluation criteria in the CBA and MOU, and therefore is beyond the court's jurisdiction. Accordingly, Plaintiff has not established that Clark was similarly-situated. * * * Plaintiff also repeatedly states that Clark "had to be transferred out of the position" due to poor performance, but plaintiff has offered absolutely no evidence to support either the reason for Clark's transfer or her assessment of Clark's performance.

> {¶65} Because Plaintiff has not established that she was replaced by a male teacher or that a comparable, similarly-situated male teacher was treated more favorably than she was based on the same conduct, she has not met her burden to establish a prima facie

16

case of gender discrimination and is not entitled to summary judgment.

{¶66} Unlike Crawford, Beans and Clark consistently drafted competent IEPs and provided Malinas with the required student data demonstrating their progress in working on their IEP goals and supporting their progress reports. Based on this meaningful distinction between Crawford on the one hand and Beans and Clark on the other, Crawford received an "Ineffective" rating for the 2015-2016 school year, while Beans received an "Accomplished" rating for that year and Clark received a "Skilled" rating for the 2016-2017 school year.

{¶67} As a result, Crawford failed to demonstrate the fourth element of the McDonnel Douglas test, namely, that she was replaced by a male teacher or that a similarly situated male comparator with the same deficiencies as her received more favorable treatment than she did.

{¶68} In view of the foregoing, the trial court did not err in denying Crawford summary judgment and in granting summary judgment in appellees' favor.

{¶69} One final point deserves mention. "An employer can demonstrate a nondiscriminatory intent with regard to demotion or termination of an employee through the 'same actor' inference. Where the same actors make positive and adverse employment decisions about an individual, especially within a short time period, a court may strongly infer a nondiscriminatory motivation in the later action." *Pirsil v. Internatl. Steel Grp.-Cleveland*, 8th Dist. Cuyahoga No. 85056, 2005-Ohio-3013, ¶15

{¶70} Here, Malinas, who is female, was involved in selecting Crawford as an interview candidate and in hiring her. Malinas repeatedly helped Crawford draft her IEPs. Malinas gave Crawford an opportunity to improve her rating by providing the

required student data, but she failed to comply. In these circumstances, a "strong inference" was raised that Malinas did not rate Crawford poorly due to gender animus just nine months after she was hired. *Pirsil, supra.*

**{¶71}** Appellant's third assignment of error is without merit.

**{¶72}** For her fourth and final assignment of error, Crawford contends:

**{¶73}** "The trial court abused its discretion by failing to compel Appellees to produce documents responsive to Crawford's Request for Production No. 11."

**{¶74}** The trial court's October 23, 2017 judgment entry shows that on October 10, 2017, the court held a pretrial conference regarding seven outstanding discovery issues. The entry shows that during the conference, court and counsel addressed these issues and the court resolved them. Crawford argues the court abused its discretion in not compelling appellees to produce all IEP reports. Item No. 5 of the entry provides: "Defendants are not required to produce Independent Education Plans ("IEPs") prepared by all intervention specialists [i.e., special education teachers] because Plaintiff did not request them in her discovery requests."

**{¶75}** It is undisputed that said conference was on the record; that the parties discussed, inter alia, Crawford's request for student IEPs; that the parties presented their positions regarding this discovery request, and that the trial court made inquiries concerning same, and that Crawford has failed to file a transcript of the conference.

**{¶76}** "The duty to provide a transcript for appellate review falls upon the appellant." *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199 (1980). "This is necessarily so because an appellant bears the burden of showing error by reference to matters in the record." *Id.* "When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass

upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm." *Id.*

**{¶77}** Since Crawford failed to file a transcript of the conference, we have no alternative but to presume regularity of the court's October 10, 2017 pretrial conference and ruling and overrule Crawford's assigned error regarding the court's.

**{¶78}** Crawford's fourth assignment of error is without merit.

**{¶79}** For the reasons stated in this opinion, the assignments of error are overruled. It is the order and judgment of this court that the judgment of the Lake County Court of Common Pleas is affirmed.


DIANE V. GRENDELL, J., concurs,

COLLEEN MARY O'TOOLE, J., dissents.