[Cite as *Gucciardo v. Springfield Local School Dist. Bd. of Edn.*, 2020-Ohio-5038.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Patrick Gucciardo

      Appellant

v.

Springfield Local School District Board
of Education

      Appellee

Court of Appeals No. L-19-1276

Trial Court No. CI0201902581

**DECISION AND JUDGMENT**

Decided: October 23, 2020

* * * * *

Edward J. Stechschulte, for appellant.

Lisa E. Pizza and David M. Smigelski, for appellee.

* * * * *

**MAYLE, J.**

**{¶ 1}** Appellant, Patrick Gucciardo, appeals the November 5, 2019 judgment of the Lucas County Court of Common Pleas, affirming the decision of appellee, Springfield Local School District Board of Education, not to renew his teaching contract. For the following reasons, we affirm the trial court judgment.

## I. Background

{¶ 2} Patrick Gucciardo was employed as a teacher by the Springfield Local School District Board of Education ("the Board"). For school years 2012-2013, 2013-2014, and 2014-2015, he was employed under successive one-year limited contracts. He was issued a three-year limited contract beginning August 18, 2015, and ending June 30, 2018.

{¶ 3} The Board sought to non-renew Gucciardo's contract when his three-year limited contract expired, but it failed to conduct three formal observations as is required under R.C. 3319.111 when a board seeks to non-renew a teacher's contract. Gucciardo was, therefore, reemployed under an extended limited contract for a term of one year under R.C. 3319.11(B). He did not grieve or otherwise challenge the issuance of this one-year extended limited contract; he accepted the contract and signed it.

{¶ 4} During the 2018-2019 school year, the Board conducted formal observations of Gucciardo on December 13, 2018, February 6, 2019, and March 13, 2019. On March 27, 2019, superintendent Matt Geha recommended to the Board that it take action to non-renew Gucciardo's teaching contract. The Board passed a resolution of its intent not to reemploy Gucciardo, and notice of its intent not to re-employ was provided to Gucciardo on April 3, 2019. On April 9, 2019, Gucciardo requested a written statement of the reasons for the non-renewal recommendation, which was provided to him on April 12, 2019. On April 15, 2019, he requested a hearing to challenge the non-renewal

2.

recommendation. The hearing was scheduled for April 30, 2019, at the Board's next meeting.

{¶ 5} The hearing took place during executive session at the Board meeting. The parties were represented, witnesses provided sworn testimony, exhibits were offered, and a court reporter recorded the hearing. When the Board resumed its public session, it voted 3-2 to uphold the non-renewal decision.

{¶ 6} On May 28, 2019, Gucciardo appealed the Board's April 30, 2019 decision to the Lucas County Court of Common Pleas under "[R.C.] 3319.11(G)(7) (and, as applicable, [R.C.] 2505.01, *et seq.* and/or [R.C.] 2506.01, *et seq.*)." Gucciardo argued that the non-renewal of his contract was procedurally defective because (1) the parties' collective bargaining agreement ("CBA") required the Board to issue a three-year limited contract—not a one-year extended limited contract—when it failed to follow the evaluations procedure in 2018; (2) the Board's second evaluation of him did not assign an overall performance rating incorporated into his Final Summative Rating of Teacher Effectiveness ("final summative rating"), in violation of R.C. 3319.112(A)(4); and (3) the Board failed to provide Gucciardo assistance to improve his performance, as required under the CBA.

{¶ 7} The common-pleas court affirmed the Board's decision not to reemploy Gucciardo in a judgment journalized on November 5, 2019. It concluded that (1) Gucciardo accepted the one-year extended limited contract when he signed it and failed to grieve it; (2) Gucciardo received three formal observations, he cited nothing requiring

3.

that each observation culminate in a single rating, the formal observation performance rubric identified the defects in Gucciardo's performance, and an overall rating in the February 2019 rubric would not have changed the outcome of his final summative rating; and (3) the incidents leading to the Board's decision to non-renew Gucciardo's contract identified specific rules violations that required no further explanation or assistance, and the CBA does not specify the nature of assistance that should be given as part of the evaluation process.

{¶ 8} Gucciardo appealed the trial court judgment and assigns a single error for our review:

> The trial court erred when it found that the Springfield Local School District Board of Education's non-renewal of Appellant Patrick Gucciardo was procedurally compliant with the evaluation procedures of R.C. 3319.11, R.C. 3319.111, and the collective bargaining Agreement.

## II. Law and Analysis

{¶ 9} Gucciardo challenges the trial court's conclusion that the Board complied with the procedural requirements of R.C. 3319.11, 3319.111, and the CBA in non-renewing his teaching contract. He maintains that the non-renewal was procedurally defective in two regards: (1) the Board failed to comply with R.C. 3319.111 and the CBA because its second of three written evaluations omitted a rating for "professionalism" and an "overall rating" and his final summative rating was based on

4.

only two formal observations instead of three; and (2) the Board failed to provide him assistance to improve his performance in accordance with the CBA.

{¶ 10} Under R.C. 3319.11(G)(7), "[a] teacher may appeal an order affirming the intention of the board not to reemploy the teacher to the court of common pleas * * * on the grounds that the board has not complied with this section or section 3319.111 of the Revised Code." But the common pleas court "is limited to the determination of procedural errors and to ordering the correction of procedural errors." *Id.* It has "no jurisdiction to order a board to reemploy a teacher, except that the court may order a board to reemploy a teacher * * * when the court determines that evaluation procedures have not been complied with pursuant to section 3319.111 of the Revised Code * * *." *Id.* "Otherwise, the determination whether to reemploy or not reemploy a teacher is solely a board's determination and not a proper subject of judicial review and * * * no decision of a board whether to reemploy or not reemploy a teacher shall be invalidated by the court on any basis, including that the decision was not warranted by the results of any evaluation or was not warranted by any statement given pursuant to division (G)(2) of this section." *Id.*

{¶ 11} In an appeal from the common pleas court's decision, we do not review the Board's action directly; rather, we review the trial court's factual findings under an abuse-of-discretion standard and its legal conclusions de novo. *Sturdivant v. Toledo Bd. of Edn.*, 157 Ohio App.3d 401, 2004-Ohio-2878, 811 N.E.2d 581, ¶ 27 (6th Dist.). We

5.

then determine "whether, as a matter of law, the decision of the common pleas court has correctly applied the law to the facts * * *." *Id.*

## A. Three Formal Observations

{¶ 12} Gucciardo first argues that the non-renewal of his employment was procedurally defective under R.C. 3319.11, 3319.111, and the CBA because the Board "failed to fully complete three observations and the observation forms" and "failed to provide [him] with a Final Summative Rating of Teacher Effectiveness based upon three observations."

{¶ 13} R.C. 3319.111(E) provides that "[t]he board shall require at least three formal observations of each teacher who is under consideration for nonrenewal and with whom the board has entered into a limited contract or an extended limited contract under section 3319.11 of the Revised Code." Under R.C. 3319.11(E):

> Any teacher employed under a limited contract, and not eligible to be considered for a continuing contract, is, at the expiration of such limited contract, considered reemployed under the provisions of this division at the same salary plus any increment provided by the salary schedule *unless evaluation procedures have been complied with pursuant to section 3319.111 of the Revised Code* and the employing board, acting upon the superintendent's written recommendation that the teacher not be reemployed, gives such teacher written notice of its intention not to reemploy such teacher on or before the first day of June. *A teacher who*

6.

*does not have evaluation procedures applied in compliance with section 3319.111 of the Revised Code* or who does not receive notice of the intention of the board not to reemploy such teacher on or before the first day of June *is presumed to have accepted such employment* unless such teacher notifies the board in writing to the contrary on or before the fifteenth day of June, and *a written contract for the succeeding school year shall be executed accordingly*.  (Emphasis added.)

{¶ 14} Under the CBA, teachers in the school district are evaluated under a Professional Growth Instrument ("PGI"), which, relevant to this appeal, includes a written Teacher Formal Observation/Performance Rubric ("the observation form" or "the rubric").  Using the observation form, the evaluator assigns the teacher an overall rating of "ineffective," "developing," "skilled," or "accomplished"; he or she also assigns these ratings—and offers comments—relating to a variety of categories, including focus for learning, assessment data, prior content knowledge, knowledge of students, lesson delivery, differentiation, resources, classroom environment, assessment of student learning, and professionalism.  For a teacher employed under a one-year limited contract, the PGI requires three formal observations lasting no less than 30 minutes each.

{¶ 15} Under the PGI, a final summative rating is ultimately calculated for the teacher using (1) Proficiency on Standards/Educator Performance—compiled from the information contained in the observation forms—and (2) Student Growth Data.

7.

{¶ 16} Here, it is undisputed that formal observations took place on December 12, 2018, February 6, 2019, and March 13, 2019. But the evaluator who completed the observation form for the February 6, 2019 observation failed to specify a professionalism rating for Gucciardo and failed to assign an overall rating. What's more, the final summative rating lists only the December 12, 2018, and March 13, 2019 observations as having been completed; it does not reference the February 6, 2019 observation. Gucciardo claims that these omissions rendered the February 6, 2019 observation incomplete, thereby rendering his non-renewal procedurally deficient.

{¶ 17} The Board acknowledges that the observation form for the February 6, 2019 observation omitted a professionalism rating and an overall rating, but it argues that R.C. 3319.111 does not require that formal observations culminate in an overall rating or a rating for each category of performance that is evaluated. It maintains that in accordance with R.C. 3319.111, the formal observation occurred, it lasted more than an hour, and the evaluator detailed her assessment of Gucciardo's performance on the observation form. While she did not assign a professionalism rating, the evaluator's assessment was mixed—she identified areas supporting a rating of "ineffective," "developing," and "skilled," and provided a detailed explanation for those ratings. The Board insists that the February 6, 2019 observation was "complete" when Gucciardo "pinned it" (i.e., electronically signed it) in the electronic Teacher and Principal Evaluation System ("eTPES").

8.

{¶ 18} The Board also maintains that the court lacks subject matter jurisdiction over Gucciardo's claims based on the CBA because under R.C. 3319.11(G)(7), "[a] teacher may appeal an order affirming the intention of the board not to reemploy the teacher to the court of common pleas * * * *on the grounds that the board has not complied with this section or section 3319.111 of the Revised Code*." (Emphasis added.) To the extent that Gucciardo claims that his non-renewal violated the CBA, the Board claims, R.C. Chapter 4117 would govern his administrative appeal.

{¶ 19} And the Board argues that even if the court has jurisdiction over the claims arising under the CBA, the CBA did not require the evaluator to assign an overall rating in each performance category. The evaluator's notes themselves provided Gucciardo with necessary feedback detailing where improvement could be made and suggestions for achieving improvement. Additionally, although the Board seems unclear about the formula used by the "eTPES vendor" to calculate Gucciardo's final summative rating—other than that it incorporates "students' proficiency on statewide assessments and student growth data in addition to formal observations"—it maintains that the net result of the formula resulted in a final summative rating "higher than any formal observation assessment of his performance," so Gucciardo cannot show that he has been harmed.

### 1. R.C. 3319.11 and 3319.111

{¶ 20} Under R.C. 3319.111(C)(1), a board must conduct an evaluation of each teacher at least once each school year no later than the first day of May, and the teacher must receive a written report of the results of the evaluation by the tenth day of May. For

9.

a teacher who is under consideration for non-renewal and with whom the board has entered into an extended limited contract, R.C. 3319.111(E) requires that three formal observations be performed.

{¶ 21} R.C. 3319.11 and 3319.111 contemplate that the formal observations will result in evaluations, the results of which will be contained in a written report provided to the teacher. And R.C. 3319.112 identifies components of the teacher's performance to be evaluated and requires ratings of "accomplished," "skilled," "developing," and "ineffective" to be assigned in assessing the teacher's performance. As noted by the trial court, no provision in the statutes renders an evaluation of the teacher's performance incomplete or defective simply because one evaluation does not provide an overall rating or because a particular component in one evaluation is not assigned a single rating.

{¶ 22} Here, the evaluator did not assign an overall rating in the observation report for the February 6, 2019 observation, but she provided ratings for each component of the performance rubric (along with comments and suggestions) except professionalism. For professionalism, she provided detailed feedback indicating that certain aspects of Gucciardo's performance warranted ratings of "ineffective," "developing," and "skilled." We conclude, as did the trial court, that the absence of an overall rating and one specific professionalism rating did not render the February 6, 2019 observation incomplete.

{¶ 23} As for the final summative rating, R.C. 3319.11 and 3319.111 do not require the completion of this evaluation as part of the procedure for non-renewing a

10.

limited contract. The compilation of this document using only two formal observations is not a procedural error for purposes of R.C. 3319.11(G)(7).

{¶ 24} Accordingly, we find no error in the trial court's conclusion that there were no procedural defects relating to the non-renewal of Gucciardo's employment under R.C. 3319.11 and 3319.111.

## 2. The CBA

{¶ 25} In addition to arguing procedural defects under R.C. 3319.11 and 3319.111, Gucciardo argues that the Board failed to comply with the requirements of the CBA when it non-renewed his employment. He maintains that the PGI required three fully-completed evaluations and a final summative rating based on three formal observations.

{¶ 26} The Board argues that the court lacks jurisdiction to consider Gucciardo's claims that his non-renewal violated the terms of the CBA because claims that arise under the CBA are governed by R.C. Chapter 4117. Gucciardo responds that where evaluation procedures are implemented by districts in conformance with R.C. 3319.111 and 3319.112, "enhancements of the evaluation procedure" are enforceable by the court. It cites the Ohio Supreme Court's decision in *Naylor v. Cardinal Local School Dist. Bd. of Edn.,* 69 Ohio St.3d 162, 630 N.E.2d 725 (1994).

{¶ 27} In *Naylor,* the Ohio Supreme Court held that "unless a collective bargaining agreement specifically provides to the contrary, R.C. 3319.111 governs the evaluation of a teacher employed under a limited contract." *Id.* at 165. Because the CBA in *Naylor* was entered into before R.C. 3319.111 became effective, and, "therefore [did]

11.

not specifically exclude or negate the rights contained in this statute," the court held that the board was bound by both the evaluation procedures set forth in its CBA and the statutory evaluation procedures contained in R.C. 3319.111. *Id.* at 165. (Notably, R.C. 3319.111 has been substantially amended since *Naylor.*)

{¶ 28} Here, the CBA does not specifically provide that it is intended to supersede R.C. 3319.11 and 3319.111, except to the extent that it alters the timeline for providing notice to a teacher of its intent to non-renew—R.C. 3319.11(E) requires notice by June 1; the CBA requires notice by May 1. But the very detailed PGI—which the evaluation procedures of the CBA indicate shall be utilized in evaluating a teacher—was developed after R.C. 3319.111 was enacted and contains very specific evaluation procedures that go beyond what is required under the statute. These procedures "manifest an intent of the parties that the negotiated evaluation procedures will prevail over the statutory procedures." *See Galat v. Hamilton City School Dist. Bd. of Educ.,* 12th Dist. Butler No. CA98-01-017, 1998 WL 744028, *4 (Oct. 26, 1998); *Coleman v. E. Cleveland City School Dist.,* 8th Dist. Cuyahoga No. 80122, 2002 WL 568188, *2 (Apr. 11, 2002) (reasoning that where CBA contained very specific evaluation procedures that were materially different from the statutory procedures, it was evident that the parties intended that the CBA procedures would prevail over the statutory procedures).

{¶ 29} But this does not really address the issue raised by the Board—whether the court has jurisdiction to consider claims arising under the CBA. Courts that have addressed this issue typically conclude that for claims arising under a CBA, the grievance

12.

procedures set forth in the CBA govern.  So "once the R.C. 3119.111 violations [are] eliminated from the complaint * * * the remaining contractual claims should be dismissed" and the grievance procedures in the CBA utilized.  *Galat* at \*5.  *See also Calkins v. Adams Cty./Ohio Valley Local School Dist. Bd. of Educ.*, 4th Dist. Adams No. 99CA673, 2000 WL 886425, \*7 (June 15, 2000) (dismissing claims for failure to exhaust administrative remedies, reasoning that their resolution rested upon interpretation of CBA—not R.C. 3319.111—thus R.C. 4117.10 required adherence to the CBA's dispute resolution procedures).

{¶ 30} In *Crawford v. Kirtland Local School Dist. Bd. of Education,* No. 2018-L-010, 2018-Ohio-4569, 124 N.E.3d 269, ¶ 41 (11th Dist.), the court dismissed a teacher's claim challenging her non-renewal for lack of subject-matter jurisdiction.  It found that "[t]he determination of whether the Board complied with the evaluation procedures in the CBA * * * required application and interpretation of the CBA," thus her "evaluation claim is a grievance, and, as a result, the grievance procedure, including final and binding arbitration, was her sole remedy, and the trial court did not err in finding it lacked subject matter jurisdiction over this part of her claim and in dismissing it."  *Id.*

{¶ 31} Here, however, the parties admitted into the record only select provisions of the CBA and those select provisions do not include whatever grievance procedures are likely contained in the CBA.  We are, therefore, unable to conclude that there was another procedure that Gucciardo was required to follow to challenge the non-renewal of his teaching contract under the CBA.

13.

{¶ 32} Turning then to the merits of Gucciardo's argument, the CBA, like R.C. 3319.111(E), did require the Board to conduct three observations of Gucciardo, and it provided that the Teacher Performance Evaluation Rubric would be employed in assessing the teacher's performance. The three observations were performed here, and rubrics were completed for each observation. While the evaluator did not assign an overall rating in the observation report for the February 6, 2019 observation, she did provided ratings for each component of the performance rubric except professionalism, and for professionalism, she provided detailed feedback indicating that certain aspects of Gucciardo's performance warranted ratings of "ineffective," "developing," and "skilled." As we did in analyzing Gucciardo's statutory claims, we conclude that the absence of an overall rating and the absence of a professionalism rating did not render the February 6, 2019 observation incomplete.

{¶ 33} With respect to the final summative rating, the trial court concluded that addition of the February 6, 2019 observation would not have altered Gucciardo's final summative rating. That rating is generated based on both the teacher's performance and student growth data. Here, apparently because of the strength of the student growth data, Gucciardo received a final summative rating that exceeded the performance ratings assigned by the evaluators who performed his observations. We agree with the trial court that the final summative rating would have been unaffected by the addition of the ratings contained in the February 6, 2019 observation report. We, therefore, conclude that the

14.

Board's calculation of a final summative rating based on only two observations did not constitute a procedural defect rendering Gucciardo's non-renewal ineffective.

### B. Assistance to Improve Performance

{¶ 34} Gucciardo also argues that the non-renewal of his employment was procedurally defective because the Board failed to provide him with assistance to improve his performance. He claims that under the CBA, it was not enough for the Board to provide him with notice of his deficiencies—it was also required to provide specific recommendations for improvement.

{¶ 35} A prior version of R.C. 3319.111(B)(3) required a board to adopt evaluation procedures that included "[a] written report of the results of the evaluation that includes specific recommendations regarding any improvements needed in the performance of the teacher being evaluated and regarding the means by which the teacher may obtain assistance in making such improvements." This language no longer appears in R.C. 3319.111. *See W. Branch Local School Dist. Bd. of Edn. v. W. Branch Edn. Assn.,* 2015-Ohio-2753, 35 N.E.3d 551, ¶ 24 (7th Dist.) ("[T]he current version of R.C. 3319.111 does not contain a requirement to give written direction for improvement and assistance in correcting the deficiencies. The version of R.C. 3319.111 that was effective from June 9, 2004 through July 28, 2011 had such a requirement * * *.").

{¶ 36} The CBA provides, however, that "[a]ll teachers shall be evaluated according to the [PGI] and given assistance to improve performance *where required*." (Emphasis added.). The PGI provides that a written Improvement Plan will be developed

15.

for a teacher who makes "below expected academic growth with students" or receives "an overall ineffective rating." It also establishes an Intensive Assistance Program for teachers who experience "severe problems" in the classroom or non-instructional issues related to the job description.

{¶ 37} The Board argues that nothing in the CBA required the Board to provide any more assistance to Gucciardo than it already did. While it acknowledges that the CBA requires it to provide "assistance to improve performance where required," it points out that (1) it does not specify when assistance is required; and (2) the observation reports offered suggestions to Gucciardo on how he might improve his performance. The Board also observes that the pages of the PGI that provide more explanation about the "Intensive Assistance Program" were not offered into the record by Gucciardo, and in any event, the pages that were offered into evidence state that an Improvement Plan will be developed "when an educator makes below-expected growth with students and/or receives an overall ineffective rating"—Gucciardo's student growth data was marked as "most effective" in his final summative rating, and he did not receive an overall rating of ineffective in December or March. The Board adds that an overall rating of ineffective would not have been warranted in February either because "nearly all areas of his performance – other than his failure to abide by policies and procedures – were assessed as either developing or skilled." Quoting the trial court judgment, the Board maintains that "no further explanation or assistance is required for Mr. Gucciardo to be able to follow the rules and regulations."

16.

{¶ 38} We agree with the Board that it is clear that Gucciardo would not have received an overall rating of ineffective, therefore, a written Improvement Plan would not have been implemented under the PGI. Gucciardo's overall ratings in the first and third observation reports were "developing." And while the February 6, 2019 observation report did not assign an overall rating, it identified only one area where Gucciardo was "ineffective."

{¶ 39} We also agree with the Board that on the record before us—specifically, without being able to review the PGI in its entirety—we cannot determine that the Intensive Assistance Program was intended to be utilized to address problems such as those experienced with Gucciardo's performance. Accordingly, we cannot say that under the CBA, the Board was required to provide assistance to Gucciardo beyond the comments and suggestions made in his evaluations.

{¶ 40} We find Gucciardo's sole assignment of error not well-taken.

### III. Conclusion

{¶ 41} We find Gucciardo's single assignment of error not well-taken. The Board conducted three observations as required by R.C. 3319.111(E) and the CBA, despite the failure of the evaluator to assign an overall rating and professionalism rating in the second observation form, and despite the fact that Gucciardo's final summative rating was calculated using only two observations. The CBA did not require the Board to provide assistance to improve Gucciardo's performance beyond the comments and

suggestions made in his performance evaluations. The trial court properly concluded that the non-renewal of his teaching contract was not procedurally defective.

{¶ 42} We affirm the November 5, 2019 judgment of the Lucas County Court of Common Pleas. Gucciardo is ordered to pay the costs of this appeal under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.                             _____
                                                     JUDGE

Arlene Singer, J.             

Christine E. Mayle, J.          _____
CONCUR.                                               JUDGE

                                                   _____
                                                      JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.